[No. B005173. Second Dist., Div. Seven. Feb. 26, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
ANTONIO MEDINA, Defendant and Respondent.

**COUNSEL**

Robert H. Philibosian, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Patrick D. Moran, Deputy District Attorneys, for Plaintiff and Appellant.

Gerson S. Horn and Robert L. Rubinstein for Defendant and Respondent.

**OPINION**

**JOHNSON, J.**—The appellant challenges the denial of its motion to reinstate the complaint pursuant to Penal Code section 871.5. The central issue raised on appeal is whether a police officer's affidavit established probable cause for the issuance of a warrant to search the respondent's residence. Because we find the information provided by the anonymous confidential informant was sufficiently corroborated to establish the informant's reliability, the affidavit based on the informant's statements was legally sufficient to support the issuance of the search warrant. We therefore reverse.

## I. Facts and Proceedings Below

Leo Newman, a Los Angeles County sheriff's deputy, was contacted by a confidential, anonymous informant between January 14 and January 19, 1983. The exact date was not specified to avoid revealing the identity of the informant. The informant told the officer (hereinafter the affiant) he had purchased heroin from "Oscar," "Mom," and "Tony" at 2 houses on Virginia Avenue in Lynwood at least 20 to 30 times during the prior 2 months. The last time he purchased heroin was from "Oscar" at his house on the day prior to the day he contacted the officer. The informant directed the affiant to 11250 Virginia Avenue and pointed out the residence as being "Oscar and Mom's" house. He also pointed out "Tony's" house at 11252 Virginia Avenue. He explained the drug operation to the affiant. "Oscar" sold his heroin in "spoons" (defined in the affidavit as toy balloons containing approximately one-fourth gram of heroin). Because "Oscar" had recently become paranoid, he had his customers call first and then met them on the street to complete the transaction. He further explained if "Oscar" and "Mom" were out of heroin they directed would-be customers to "Tony's" house.

At this time, the affiant searched the informant and found he had no contraband in his possession. The informant phoned 635-1572 and asked for "Oscar." A male voice came on the line. The informant indicated he wanted a "couple" (defined in the affidavit as two balloons of heroin) and was instructed to go to a specific street corner in ten minutes. The affiant monitored this phone conversation. Following the conversation, the affiant gave the informant $50 and followed the informant to the indicated street corner. Other officers watched the 11250 Virginia Avenue residence. They observed a Mexican male leave the house, go to the indicated street corner in a blue 1979 Chevrolet, and meet the informant. The officer observed the informant exchange a small item for money. After the exchange, the informant went directly back to the affiant and gave him two balloons containing a tan powder resembling heroin. The informant identified the person who supplied the balloons as "Oscar." "Oscar" returned directly to his house. The affiant subsequently performed a chemical test on the tan powder in the balloons and it was found to be heroin.

Between January 17, 1983, and January 24, 1983, the affiant observed the two locations on Virginia Avenue on three occasions for approximately one and one-half hours on each occasion. During these occasions, he observed foot traffic going to both houses. It followed the pattern previously described by the informant when "Oscar" and "Mom" were out of heroin. The foot traffic would usually go first to the 11250 residence and without entering immediately go to the 11252 residence. They would enter the latter

residence and stay for less than five minutes. The affiant, on three occasions, also observed "Oscar" leave his residence, walk to the 11252 residence, and get into the 1979 Chevrolet. He would then drive to a local street corner, meet someone, and exchange a small object for money.

The affiant subsequently checked the telephone number 635-1572 through departmental sources and found it listed to Oscar Frayde at 11250 Virginia Avenue in Lynwood, California.

The affiant, based on his extensive experience, believed the above-described activities were consistent with narcotics sales. He concluded "Oscar," "Mom," and "Tony" were currently in possession of heroin for sale at 11250 and 11252 Virginia Avenue.

The foregoing information was placed in an affidavit by the affiant and presented to a magistrate on January 25, 1983. The magistrate issued a search warrant authorizing the search of both residences, the Chevrolet, and the three suspects discussed above. The warrant was executed on February 2, 1983, and narcotics were found at 11252 Virginia Avenue. The respondent, Antonio Medina, was arrested at that time and was subsequently charged with violating California Health and Safety Code section 11351 (possession for sale of heroin) and Health and Safety Code section 11350, subdivision (a) (possession of cocaine).

On or about June 29, 1983, Medina moved for an order suppressing the evidence seized under the warrant on the ground the affidavit failed to establish probable cause for the search. The municipal court granted the motion after argument on January 24, 1984. The court essentially ruled there was insufficient corroboration of the information provided by the informant to establish probable cause to search Medina's residence at 11252 Virginia Avenue. Since the People were unable to proceed without the suppressed evidence, the court dismissed the complaint.

On February 1, 1984, the appellant filed a motion to reinstate the complaint in superior court. The motion was denied on March 22, 1984.

A timely notice of appeal was filed on April 18, 1984, and briefing completed on October 16, 1984.

II. THE CURRENT STATE OF THE LAW

The Fourth Amendment of the United States Constitution and article I, section 13 of the California Constitution both guarantee the right of the people to be secure in their persons, houses, papers and effects against

unreasonable searches and seizures and require warrants not be issued except upon a showing of probable cause. ■ In addition, the United States Supreme Court and the California Supreme Court have held probable cause may be established on the basis of an affidavit of a law enforcement officer which relies entirely on an informant's tip. Prior to the Supreme Court's decision in *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317], the Fourth Amendment standard for assessing such an affidavit was set forth in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]. Under these latter cases, a hearsay affidavit had to meet a two-pronged test before it would be deemed sufficient to establish probable cause. First, the magistrate had to be informed of some of the underlying circumstances from which the informant concluded the items subject to the search were where he claimed they were. (This had been designated the "basis of the knowledge" prong.)[1] Second, the magistrate had to be informed of some of the underlying circumstances from which the officer concluded the informant was credible or his information reliable. (This had been designated the "veracity" prong.) (*Aguilar* v. *Texas, supra,* 378 U.S. at pp. 114-115 [12 L.Ed.2d at pp. 728-729]; *Spinelli* v. *United States, supra,* at p. 413 [21 L.Ed.2d at p. 729].)

In *Gates,* the United States Supreme Court abandoned the two-pronged test. Instead, it adopted a totality of the circumstances analysis. ■ As the court stated: "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. *Jones* v. *United States, supra,* 362 U.S., at 271, 80 S.Ct., at 736." (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 238-239 [76 L.Ed.2d at p. 548, 103 S.Ct. at p. 2332].) (See also *Massachusetts* v. *Upton* (1984) 466 U.S. 727, 732 [80 L.Ed.2d 721, 727, 104 S.Ct. 2085, 2087-2088].)

In assessing an affidavit based on hearsay, California courts had articulated a standard which in essential respects corresponded to the standard established in *Aguilar* and *Spinelli.* However, this standard had not been derived solely from the courts' interpretation of the Fourth Amendment but also from the state Constitution, article I, section 13. (*People* v. *Campa* (1984) 36 Cal.3d 870, 880-881 [206 Cal.Rptr. 114, 686 P.2d 634].) As the

---

[1]The parties agree the informant had personal knowledge of the information he reported and thus satisfied the "basis of knowledge" prong.

Supreme Court stated in *Campa*, ". . . '*Aguilar's* two-pronged test' (*Spinelli, supra,* 393 U.S. at p. 413 [21 L.Ed.2d at p. 642]) has provided a convenient shorthand articulation of previously established principles of California law in the area of hearsay affidavits." (*Id.,* at p. 880.) It was recognized that this standard was a higher standard than the recently established standard in *Illinois* v. *Gates* and thus permitted the suppression of evidence which was no longer permitted in federal court. (See *People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 754-755, fn. 2 [195 Cal.Rptr. 311].) However, in the very recent California Supreme Court decision *In re Lance* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], the court held Proposition 8 abrogated a defendant's right to object to and suppress evidence which has been seized in violation of the California Constitution but has not been seized in violation of the United States Constitution. Thus, although under prior California law the search warrant at issue would have been subject to more exacting scrutiny, we must now confine our analysis to a determination whether the warrant was proper under federal constitutional principles.

III. THE AFFIDAVIT ESTABLISHED PROBABLE CAUSE TO SEARCH THE RESPONDENT'S HOUSE.

■ ■■■ As discussed above, the United Supreme Court in *Illinois* v. *Gates* eliminated the "two-pronged test" established in *Aguilar* and *Spinelli* and replaced it with a totality of the circumstances analysis.[2] As the court stated, ". . . the 'two-pronged test' has encouraged an excessively technical dissection of informant's tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate." (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 234-235 [76 L.Ed.2d at pp. 545-546, 103 S.Ct. at p. 2330]; see *Massachusetts* v. *Upton, supra,* 466 U.S. at p. 732 [80 L.Ed.2d at p. 727, 104 S.Ct. at p. 2087].) However, while abandoning the "two-pronged test," the court continued to recognize the key role which the corroboration of details of an informant's tip by independent police work can serve. Under the old test, adequate corroboration of some of the elements of the tip had been held to satisfy the veracity prong when the past reliability of the informant had not been established. (See *Spinelli* v. *United States, supra,* 393 U.S. at pp. 417-418 [21 L.Ed.2d at p. 644]; *United States* v. *Bush* (3d Cir. 1981) 647 F.2d

---

[2]Although *Gates* was decided after the search at issue, it applies to all searches whether they took place before or after the decision. (*United States* v. *Little* (8th Cir. 1984) 735 F.2d 1049, 1054, different result reached on other grounds on rehg. in *United States* v. *Sager* (8th Cir. 1984) 743 F.2d 1261; *United States* v. *Mendoza* (5th Cir. 1984) 727 F.2d 448, 451; *United States* v. *Estrada* (9th Cir. 1984) 733 F.2d 683, 685, cert. den. *Estrada* v. *United States* (1984) — U.S. — [83 L.Ed.2d 103, 105 S.Ct. 168], cert. den. *Gorman* v. *United States* (1984) — U.S. — [83 L.Ed.2d 127, 105 S.Ct. 194].)

357, 362-363; *United States* v. *Spach* (7th Cir. 1975) 518 F.2d 866, 870-871; *United States* v. *Ward* (8th Cir. 1983) 703 F.2d 1058, 1061.) As explained in *United States* v. *Spach, supra,* "The second type of corroboration [corroboration of information to establish the veracity of the informer] is based on the premise that if it can be shown that part of the information provided by an informer is correct, this gives credibility to the remainder of the information." (*Id.,* at p. 871; see also 1 LaFave, Search & Seizure (1978) § 3.3 subd. (f), p. 556; *Hignut* v. *State* (1973) 17 Md.App. 399 [303 A.2d 173, 179.]) Thus the objective of independent corroboration was to demonstrate that the informant was not "fabricating his report out of whole cloth." (*Spinelli* v. *United States, supra,* 393 U.S. at p. 417 [21 L.Ed.2d at p. 644]; see also *United States* v. *Bush, supra,* 647 F.2d at p. 363.) This currently remains the objective. ▮ As the court in *Gates* stated, "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" (Citation omitted.) (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 244-245 [76 L.Ed.2d at p. 552, 103 S.Ct. at p. 2335].)

▮ Medina argues there was insufficient corroboration of the informant's information to support the issuance of the search warrant in the case at bar. We disagree. Numerous details provided by the informant were corroborated. Importantly, this corroboration verified in significant part the modus operandi that had been described by the informant. For instance, the informant participated in a controlled sale. To arrange this sale, the informant called "Oscar" and "Oscar" told him to meet him at a location away from his residence. The affiant monitored this phone call. The telephone number was confirmed by the affiant to be listed to "Oscar" at the address previously given by the informant. The affiant followed the informant to the designated location. During this time, a person later identified by the informant as "Oscar" was seen to leave the address confirmed to be his residence. He subsequently met with the informant, exchanged a small object for money, and returned to his home. The item given to the informant was later tested and found to be heroin.[3] As further corroboration, the affiant observed the two residences during the week prior to the issuance of the search warrant. On three occasions during that week, the affiant saw "Oscar" leave 11250 Virginia Avenue, go to 11252, then get in a car, drive to a nearby corner and make what the affiant determined, based on his expertise, was a drug transaction. The affiant also observed activity between the

---

[3]The participation in a controlled sale is a recognized method to establish the informant's reliability or veracity. (See *United States* v. *Fluker* (9th Cir. 1976) 543 F.2d 709, 714; *Hignut* v. *State, supra,* 303 A.2d at p. 180; *Dannelley* v. *State* (Ala. App. 1981) 397 So.2d 555, 567, cert. den. (Ala. 1981) 397 So.2d 577, cert. den. (1981) 454 U.S. 856 [70 L.Ed.2d 151, 102 S.Ct. 305].)

two houses thus further corroborating the modus operandi described by the informant. On three occasions, the affiant observed foot traffic going to both houses, usually going first to 11250, then going on to 11252 without entering 11250. They would stay at 11252 for less than five minutes and leave. All of these observations when examined together provided significant corroboration of the information provided by the informant. Furthermore, this corroboration was clearly not of wholly innocent activities.[4] Finally, under the *Gates* totality of the circumstances analysis, the affiant's substantial corroboration of the informant's information was not the only consideration which supported the issuance of the warrant. The informant's personal knowledge of the information provided also supported its issuance.

The municipal court, in ruling on Medina's motion to suppress, isolated the corroboration of the informant's tip with respect to "Oscar" from the corroboration with respect to "Tony." Thus the court stated: "Basically, what they [the police] have is an untested, uncorroborated statement from an informant that someone, named Tony, is dealing. They see people, some foot traffic, and that is it. You see Oscar go over there a couple of times and leave, and apparently he's supposed to have made a sale. They did not bust any of these people that he allegedly sold to, as defense counsel correctly points out.

"In the *Gates* case, they go much more into surveillance, corroboration and all these things. This case here—*you have a great case on Oscar, and I don't know where Oscar is. He should be in custody or in prison.* But as far as Tony is concerned, I do not believe that the People have met their burden, even under *Illinois* versus *Gates.*" (Italics added.)

The superior court, in reviewing the decision of the lower court, stated since it wouldn't have issued the warrant in the first place, it agreed there wasn't sufficient corroboration to issue the warrant as to 1252.[5]

We cannot support the isolation of the elements of corroboration in this manner. As discussed earlier, the *Gates* court rejected the *Aguilar-Spinelli*

---

[4]Prior to the *Gates* decision, some courts held the corroboration necessary to establish an informant's reliability could not be of innocent activities. *Gates,* however, rejected this requirement. (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 243-244, fn. 13 [76 L.Ed.2d at p. 552, 103 S.Ct. at p. 2335].) Moreover, counter to Medina's contention, the foot traffic to Medina's residence was indeed suggestive of criminal conduct when examined as part of the total picture.

[5]We agree with the appellant the superior court may have misconceived its role in reviewing the decision of the magistrate to issue the search warrant. As the *Gates* court stated, ". . . the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." (Citation omitted.) (*Illinois* v. *Gates, supra,* 462 U.S. at p. 236 [76 L.Ed.2d at p. 547, 103 S.Ct. at p. 2331].)

test because of "excessively technical dissection of informants' tips." Yet this is exactly what the court seems to have done. In the case before us, the informant's statements were corroborated in a number of key respects. It was inappropriate to conduct a piecemeal examination of these corroborative elements *when the informant's information linked these suspects and their houses together and this link was also corroborated.*

It is important to emphasize what the case before us is not. This is not a case where no connection was established between the suspects and locations described by the informant, i.e., a case in which an informant provides information about two individuals and two separate premises with no shared relationship. The foot traffic thus must be viewed in light of all the information provided by the informant and the other corroborative elements. When viewed together, these corroborative elements provided a substantial basis for crediting the hearsay.

Furthermore, we don't believe the result would have been different under the earlier *Aguilar-Spinelli* test because the purpose served by corroboration was substantially the same as under the current test—to establish that the information provided by the informant did not constitute a made-up story, one fabricated out of whole cloth. Corroboration of part of the information provided by the informant was said to give credibility to the remainder of the information. Such a rationale provided little support for the piecemeal approach taken in this case.[6]

■ Finally, Medina also contends even if the informant is deemed reliable, the information supplied by the affidavit was too stale to support issuance of a search warrant. We reject this contention. According to the informant, he had purchased heroin at the 2 houses 20 to 30 times during the 2 months preceding his contact with the affiant. Subsequent observations by the affiant confirmed such activity was still continuing up to the time of the issuance of the warrant. Given the ongoing nature of the activity on the premises, the magistrate was justified in concluding heroin was currently

---

[6]Numerous courts when applying the *Aguilar-Spinelli* "two-prong" test held the reliability or veracity of an informant could be established by the past performance of the informant. (See *United States* v. *Bush, supra,* 647 F.2d at p. 362; *State* v. *Eller* (1978) 36 N.C.App. 624 [244 S.E.2d 496, 497]; 1 LaFave, Search & Seizure, *supra,* § 3.3(b), pp. 508-512.) Thus corroboration of the informant's story with *respect to the particular individual currently suspect* was not necessary. The informant's credibility had been sufficiently established in the past to justify reliance on his information presently. Such a position supports the conclusion reached here with respect to independent corroboration when there has been no prior dealings with the informant. When an informant has described a joint operation and the link between the suspects has in part been corroborated, a magistrate isn't required to assess additional corroboration with respect to each suspect in isolation. There must simply be sufficient corroboration of the story *as a whole* for the magistrate reasonably to conclude aspects of the information not so corroborated are also likely to be accurate.

on the premises. (See *People* v. *Thompson* (1979) 89 Cal.App.3d 425, 429-430 [152 Cal.Rptr. 495]; *People* v. *Reed* (1981) 121 Cal.App.3d Supp. 26, 33-34 [176 Cal.Rptr. 98]; cf. *Hemler* v. *Superior Court* (1975) 44 Cal.App.3d 430, 433-434 [118 Cal.Rptr. 564].)

We conclude the police officer's affidavit established probable cause for the issuance of a warrant to search Medina's residence. The information provided by the anonymous, confidential informant was sufficiently corroborated to establish the informant's reliability, and thus the affidavit was legally sufficient to support the issuance of the search warrant.[7]

### DISPOSITION

The ruling of the superior court in denying the appellant's motion to reinstate the complaint is reversed. The case is remanded for further proceedings consistent with this opinion.

Lillie, P. J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 25, 1985.

---

[7]Because we conclude the search warrant was validly issued, we do not reach the appellant's additional argument that under *United States* v. *Leon* (1984) — U.S. — [82 L.Ed.2d 677, 104 S.Ct. 3405] the evidence could not be suppressed if the officer relied upon the warrant in good faith.