[No. B160371. Second Dist., Div. Six. Aug. 6, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKY HULLAND, Defendant and Appellant.

1648

## COUNSEL

Law Offices of Carl K. Osborne, Carl K. Osborne and Philip A. Iadevaia for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson, and Michael W. Whitaker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERREN, J.**—A police officer purchases drugs from a defendant, then waits 52 days before seeking a warrant to search two residences where the defendant allegedly lives. When the defendant moves to suppress evidence obtained from the search, the trial court finds the warrant was based on stale information, but denies suppression on further finding that the officer executed the warrant in good faith.

Here we conclude that the officer, who both sought and executed the warrant, should have known that the stale information contained in his search warrant affidavit lacked the necessary indicia of probable cause. Knowing this, an objectively reasonable officer also would have known that he or she could not rely on the magistrate's issuance of the warrant. Although the determination of staleness is always made on a case-by-case basis, the good faith exception only applies to those cases in which that determination presents a close question. Such a limitation on the application of the exception is necessary to avoid evisceration of the staleness doctrine.

Ricky Hulland appeals from the judgment following his no contest plea to possession of marijuana for sale (Health & Saf. Code, § 11359). Hulland was placed on formal probation for three years on the condition that he serve 90 days in jail. He contends the trial court erred in denying his motion to suppress evidence pursuant to Penal Code section 1538.5 by concluding that the good faith exception to the exclusionary rule applied. We agree and, accordingly, reverse.

## FACTS AND PROCEDURAL HISTORY

### THE SEARCH WARRANT AFFIDAVIT

On November 15, 2001, Pasadena Police Officer Kevin Jackson sought and obtained a warrant to search two residences and two automobiles purportedly belonging to Hulland. The affidavit in support of the warrant stated that in September the officer had been contacted by a confidential reliable informant (CRI) who told him that Hulland was dealing marijuana. A Department of Motor Vehicles (DMV) records check verified the CRI's statement that Hulland lived in an apartment on Crenshaw Boulevard in Los Angeles. The affiant also stated that the records reflected an address for Hulland on Don Ricardo Drive. The attached DMV printout reflects, however, that a Ricky *Holland* resides at the Don Ricardo Drive address.

The CRI agreed to participate in a controlled purchase of marijuana from Hulland. Between September 21 and 30, the CRI called Hulland's cell phone and ordered marijuana. Hulland agreed to deliver the marijuana to the CRI at a parking lot in Pasadena. Officer Jackson drove the CRI to the parking lot. Hulland drove next to the driver's side window and handed the officer a sweatshirt wrapped around an unspecified amount of marijuana. In exchange, the officer gave Hulland an unspecified amount of money. The officer removed the marijuana and returned the sweatshirt to Hulland.[1]

On October 9, Officers Jackson and Medrano conducted surveillance of both the Crenshaw Boulevard and Don Ricardo Drive addresses. Officer Medrano observed Hulland as he left the apartment building on Crenshaw Boulevard and got into the car he had used to deliver the marijuana. Officer Jackson observed a Mercedes Benz parked at the Don Ricardo Drive address that was purportedly registered to Hulland. According to the officer's affidavit, the CRI had verified that Hulland drove a green Mercedes. As the DMV printout indicated, however, the Mercedes was registered to a Ricky *Holland* who resided at the Don Ricardo Drive address.

After the controlled buy, Officer Jackson made several attempts to contact Hulland by calling his cell phone and pager. Both numbers had been disconnected. Based on his experience, Officer Jackson believed that Hulland had changed his cellular and pager numbers in an effort to avoid apprehension. Officer Jackson also stated in his affidavit that on October 12, an agent of the United States Postal Inspectors Office told him that a "Ricky Hulland" was currently receiving mail at both the Crenshaw Boulevard and Don Ricardo Drive addresses.

---

[1] Hulland was subsequently charged with selling the marijuana, but the charge was dismissed pursuant to Evidence Code section 1042, subdivision (d), after the prosecution refused to disclose the identity of the CRI.

Officer Jackson stated that in his opinion "[g]iven the large quantity of marijuana that Hulland sold and transported, it is my belief that he continues to traffic in large quantity narcotics." The officer based his opinion on his six years of experience as a police officer, the past 11 months of which were under assignment in a special section that investigated mid-to-major level, drug-related crimes.[2] The officer also stated his belief that the police surveillance and postal inspector's apparent confirmation that Hulland received mail at both the Crenshaw Boulevard and the Don Ricardo Drive addresses provided probable cause to believe that Hulland resided at both addresses.

## THE SEARCH

Officer Jackson and other officers served the search warrant at the Crenshaw Boulevard address on November 15. During the search, they seized approximately 110.97 grams of marijuana, 10.97 grams of rock cocaine, $3,800 in cash, a handgun, a shotgun, a scale, and ziplock baggies. When Officer Jackson attempted to serve the warrant at the Don Ricardo Drive address, he discovered that a Ricky *Holland* resided there and that the Mercedes identified in the search warrant was registered to him.

## THE PENAL CODE SECTION 1538.5 HEARING

On April 10, 2002, Hulland moved to quash the warrant and to suppress the seized evidence on the ground that the information supporting the finding of probable cause was stale. The trial court agreed that the information was stale because the warrant was not issued until at least 52 days after the controlled buy.

In support of the prosecution's contention that the warrant was executed in good faith, Officer Jackson testified that, in his opinion, the information in the warrant was not stale because he had purchased "just under a pound" of marijuana from Hulland and believed that an individual selling such a large amount of marijuana would still be dealing the drug less than two months later. The officer also testified that his delay in seeking the warrant was due to his continuing efforts to confirm that Hulland lived at both addresses. The officer did not indicate what those efforts were, however, nor did he provide any explanation for the 52 day delay. He also stated he had continued calling Hulland's disconnected numbers to determine whether they were only temporarily disconnected. He further testified that he had spelled Hulland's name for the postal inspector prior to receiving the purported confirmation that Hulland lived at the Don Ricardo Drive address. He failed, however, to

---

[2] Officer Jackson subsequently testified that he had actually been in the special drug-enforcement unit for two and one-half years.

explain the discrepancy between the CRI's purported representation that Hulland drove the green Mercedes identified in the search warrant and the fact that the vehicle was actually registered to the individual named *Holland* who resided at the Don Ricardo Drive address and that no green Mercedes was ever linked to Hulland.

The court concluded that Officer Jackson had executed the warrant in good faith, and accordingly denied the motion to suppress. The court reasoned: "I certainly can't fault the police officer from [*sic*] believing that if he bought some drugs from the individual then went back 52 and 57 days later, with a search warrant, I can't fault him for searching for drugs where the seller resides."

## DISCUSSION

### The Fourth Amendment's Warrant Requirement—Standard of Review

The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.) "The 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' [Citation.]" (*Payton v. New York* (1980) 445 U.S. 573, 585–586 [63 L.Ed.2d 639, 100 S.Ct. 1371].) A warrant to search an individual's home shall not be issued unless the magistrate determines there is a "fair probability that ... evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 103 S.Ct. 2317].)

In reviewing a trial court's denial of a motion to suppress evidence obtained pursuant to a warrant, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729]; *People v. Weaver* (2001) 26 Cal.4th 876, 924 [111 Cal.Rptr.2d 2, 29 P.3d 103].) Although we give great deference to the magistrate's determination of probable cause (*Illinois v. Gates, supra,* 462 U.S. at p. 236), the purpose of our review " '... is to insure that the affidavit supplies facts of cause to search so that the magistrate issuing the warrant decides upon the existence of cause with judicial detachment and does not act as a rubber stamp. [Citations.] ...' " (*People v. Smith* (1980) 108 Cal.App.3d 843, 851 [166 Cal.Rptr. 778].)

STALENESS

The trial court found that the warrant under which Officer Jackson searched Hulland's residence was not supported by probable cause because it was based on stale information. ▇ Information that is remote in time may be deemed stale and thus unworthy of consideration in determining whether an affidavit for a search warrant is supported by probable cause. Such information is deemed stale unless it consists of facts so closely related to the time of the issuance of the warrant that it justifies a finding of probable cause at that time. The question of staleness turns on the facts of each particular case. (*Alexander v. Superior Court* (1973) 9 Cal.3d 387, 393 [107 Cal.Rptr. 483, 508 P.2d 1131]; *People v. Gibson* (2001) 90 Cal.App.4th 371, 380 [108 Cal.Rptr.2d 809].) If circumstances would justify a person of ordinary prudence to conclude that an activity had continued to the present time, then the passage of time will not render the information stale. (*People v. Mikesell* (1996) 46 Cal.App.4th 1711, 1718 [54 Cal.Rptr.2d 708].)

It is undisputed that the probable cause determination in this case was dependent on the information leading to and including the controlled buy. The relevant inquiry is thus whether Officer Jackson held an objectively reasonable belief that this information had not grown stale by the time he sought and obtained the warrant. ▇ Although there is no bright line rule indicating when information becomes stale (*People v. Brown* (1985) 166 Cal.App.3d 1166, 1169 [212 Cal.Rptr. 907]), delays of more than four weeks are generally considered insufficient to demonstrate present probable cause. (*Hemler v. Superior Court* (1975) 44 Cal.App.3d 430, 434 [118 Cal.Rptr. 564], citing Annot., Search Warrant: Sufficiency of Showing as to Time and Occurrence of Facts Relied On (1965) 100 A.L.R.2d 525, §§ 6, 7, and cases cited.) For example, a delay of 34 days between a controlled sale of heroin and the officer's affidavit for the search warrant has been held insufficient to establish present probable cause. (*Hemler,* at pp. 433–434.) Longer delays are justified only where there is evidence of an activity continuing over a long period of time or the nature of the activity is such as to justify the inference that it will continue until the time of the search. (*People v. Medina* (1985) 165 Cal.App.3d 11, 20–21 [211 Cal.Rptr. 216].)

Respondent does not challenge the trial court's finding that the controlled buy of marijuana from Hulland had grown stale by the time the warrant was issued. This implicit concession of the staleness issue is well taken. There was no information before the magistrate regarding any prior or subsequent criminal activity by Hulland, nor was there any evidence of such activity ever taking place at his residence. Although evidence of drug dealing may be sufficient by itself to furnish probable cause to search the defendant's residence (*People v. Pressey* (2002) 102 Cal.App.4th 1178, 1185 [126

Cal.Rptr.2d 162]), nothing about the nature of the transaction here supports an inference that Hulland continued to sell marijuana until the time of the search, much less that he would be keeping the drugs at his residence (cf. *People v. Medina, supra,* 165 Cal.App.3d at pp. 20–21). This conclusion is buttressed by the fact that the controlled buy took place in a parking lot in a different city. Thus, the trial court was correct in concluding that the warrant was not supported by probable cause in that it was based on information that had grown stale by the time the warrant was issued.

### THE GOOD FAITH EXCEPTION

Having concluded that the information in the affidavit was stale, the trial court denied Hulland's motion to suppress relying upon what is commonly known as the good faith exception to the exclusionary rule.[3] (See *United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].) ▪ This exception provides that evidence obtained in violation of the Fourth Amendment need not be suppressed where the officer executing the warrant did so in objectively reasonable reliance on the warrant's authority. The test for determining whether the exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." (*Leon,* at pp. 922–923, fn. 23.)

In *Leon,* the United States Supreme Court explained that "the exclusionary rule does not, and cannot, cure the constitutional violation, which is fully accomplished by the illegal search itself. [Citations.] Rather, the exclusionary rule 'operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect. [Citations.]' [Citation.] Thus, its ' "prime purpose" ' is to ' "effectuate" ' the Fourth Amendment's guarantee against unreasonable searches or seizures by 'deter[ring] future unlawful police conduct.' [Citation.] Moreover, because the exclusionary rule is a 'remedial device,' its application is 'restricted to those situations in which its remedial purpose is effectively advanced.' [Citation.] Thus, application of the exclusionary rule ' "is unwarranted" ' where it would ' "not result in appreciable deterrence." ' [Citation.]" (*People v. Willis, supra,* 28 Cal.4th at pp. 29–30.)

"Regarding exclusion's potential effect on individual law enforcement officers and the policies of their departments, the high court explained generally that the deterrence rationale for the exclusionary rule ' "necessarily

---

[3] The California Supreme Court has recently recognized "that the term 'good faith exception' may be somewhat of a misnomer, because the exception focuses on the objective reasonableness of an officer's conduct. [Citations.] Nevertheless, we use the term because of its common acceptance by commentators and courts, including the high court itself. [Citation.]" (*People v. Willis* (2002) 28 Cal.4th 22, 29, fn. 3 [120 Cal.Rptr.2d 105, 46 P.3d 898].)

assumes that the police have engaged in willful, or at the very least negligent, conduct ...." ' [Citation.] Thus, exclusion is proper ' "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional ...." ' [Citation.] Given these underlying principles, the court concluded that exclusion will not further the exclusionary rule's ends where 'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." [Citation.] Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.' [Citation.] Thus, 'the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.' [Citation.]" (*People v. Willis, supra*, 28 Cal.4th at p. 31.)

The *Leon* court went on to recognize, however, that evidence obtained pursuant to a search warrant that is not supported by probable cause must be suppressed "where an officer's reliance on a search warrant was not 'objectively reasonable,' i.e., the officer had 'no reasonable grounds for believing that the warrant was properly issued.' [Citation.] ' "Grounding the [good faith exception] in objective reasonableness ... retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment." [Citations.]' [Citation.]" (*People v. Willis, supra*, 28 Cal.4th at p. 31.) The officer's reliance on the warrant is not objectively reasonable if the record reflects that "(1) the issuing magistrate was misled by information that the officer knew or should have known was false; (2) the magistrate wholly abandoned his or her judicial role; (3) the affidavit was so lacking in indicia of probable cause that it would be entirely unreasonable for an officer to believe such cause existed; [or] (4) the warrant was so facially deficient that the executing officer could not reasonably presume it to be valid. [Citations.]" (*People v. Lim* (2000) 85 Cal.App.4th 1289, 1296 [102 Cal.Rptr.2d 604].)

In evaluating the officer's reliance in this regard, we "may not rely on the fact that a warrant was issued in assessing objective reasonableness of the officer's conduct in seeking the warrant." (*People v. Camarella* (1991) 54 Cal.3d 592, 596 [286 Cal.Rptr. 780, 818 P.2d 63].) Moreover, the prosecution has the burden of proving that the officer's reliance on the warrant was

objectively reasonable. (*Ibid.*) " 'The standard of objective good faith derives from something more substantial than a hunch. It requires that officers "have a reasonable knowledge of what the law prohibits." [Citation.]' " (*People v. Hernandez* (1994) 30 Cal.App.4th 919, 924 [35 Cal.Rptr.2d 916].) "[A]lthough 'doubtful or marginal cases are to be resolved with a preference for upholding a search under a warrant' [citation], we must be mindful of the 'right of residential privacy at the core of the Fourth Amendment' [citation]." (*People v. Pressey, supra,* 102 Cal.App.4th at p. 1189.)

Hulland contends that suppression was compelled under the third *Leon* prong, i.e., because the affidavit offered in support of the warrant was so lacking in indicia of probable cause that it was objectively unreasonable for Officer Jackson to believe such cause existed. We agree. This is not one of those doubtful or marginal cases in which the officer's reliance on a warrant may be deemed objectively reasonable. As we have already noted, it is well settled that evidence more than four weeks old is generally considered too stale for the magistrate to issue a warrant (*Hemler v. Superior Court, supra,* 44 Cal.App.3d at p. 434), and that longer delays must be supported by evidence indicating that the criminal activity giving rise to the warrant has continued over a long period of time or that the nature of the activity supports the inference that the activity is ongoing (*People v. Medina, supra,* 165 Cal.App.3d at pp. 20–21). The trial court in this case found that Officer Jackson's reliance on the warrant was objectively reasonable because the officer had stated that the amount of drugs involved in the controlled buy led him to believe that Hulland was not merely a one-time drug dealer. Aside from the fact that the officer's affidavit did not specify the amount of drugs that had been purchased, the totality of facts known to the officer would not lead a well-trained officer to reasonably believe that a delay of almost two months in seeking a warrant was justified. As we have already explained, there is no indication that Hulland ever sold marijuana prior to or subsequent to the controlled buy, or that he ever sold drugs out of his home. ██ Although probable cause has been found to exist when a search warrant issues shortly after a drug transaction, the hiatus between the sale and the search in the instant matter evidences a lack of probable cause to search absent additional factors, such as proof of ongoing transactions, suspicious activity at the premises to be searched, or other evidence indicating ongoing criminal activity. No such proof was presented here. In other words, no reasonable officer would have believed that the information offered in support of the warrant consisted of " ' "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." ' [Citation.]" (*Hemler,* at p. 433.)

Respondent contends that the delay was also due in part to Officer Jackson's ongoing attempts to verify Hulland's addresses. Assuming that the officer's motivation in this regard is relevant to the good faith determination,

it is undisputed there was probable cause to believe that Hulland resided at the Crenshaw address as early as October 9. According to the affidavit, on October 12 the post office informed Officer Jackson that an individual named Ricky Hulland resided at both addresses for which the search warrant was ultimately obtained. The officer offered no explanation for waiting more than a month after receiving this information to seek the warrant, and no well-trained officer would have believed that such a delay was justified under the circumstances. Because the facts known to the officer did not create a close question for any objectively reasonable and well-trained officer on the issue of staleness, the officer's mistaken reliance on the warrant cannot be excused under the good faith exception. (See *People v. Camarella, supra,* 54 Cal.3d at p. 606.)

Although there are no California cases addressing the application of the good faith exception to a warrant based on stale information, recent cases from other jurisdictions are consistent with our decision. In *United States v. Bagford* (S.D.Ohio 2003) 255 F.Supp.2d 767, 773, the court concluded that the good faith exception applied to a search conducted pursuant to a warrant based on events that occurred over a year earlier because the affidavit offered in support of the warrant provided information from a confidential informant indicating that "large shipments of marijuana were made to [the defendant's residence] every few weeks, thus demonstrating continuous use of that location for drug trafficking and that is was a secure operational base." As we have noted, no such evidence was present here. Indeed, there was no evidence of continued activity and none linking either location to *any* criminal activity.

In *United States v. Zimmerman* (3d Cir. 2002) 277 F.3d 426, the Third Circuit rejected application of the good faith exception to a case in which evidence was seized under a warrant based on information indicating that six months earlier the defendant had shown minors adult pornographic material that he had downloaded on his computer. (*Id.,* at pp. 434, 437.) In concluding that the officer's reliance on the warrant was not objectively reasonable, the court added that "particularly where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable." (*Id.,* at p. 438.) The government faces a similar insurmountable obstacle here.

## CONCLUSION

"Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." (*United States v. Reilly* (2d Cir. 1996) 76 F.3d

1271, 1280.) A reasonably well-trained officer would have recognized that probable cause in this case had grown stale by the time the warrant was sought and executed. ■ To prevent the exception from swallowing the rule, application of the good faith exception must be limited in this context to those cases in which the staleness determination is a close one. This is not such a case. Accordingly, the trial court erred in denying Hulland's motion to suppress the evidence obtained from the search executed under the purported authority of that warrant.

In light of our conclusion, we need not address Hulland's arguments that the warrant was facially deficient or that the magistrate was misled by information the officer knew or should have known to be false.

The judgment is reversed with instructions to the trial court to enter an order granting Hulland's motion to suppress.

Yegan, Acting P. J., and Coffee, J., concurred.