Filed 5/12/16  P. v. Tang CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067905 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD255573) |
| THANG DUC TANG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Leo Valentine, Jr., Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric Swenson, Lynne E. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Thang Tang committed numerous crimes, including three counts of burglary and several identity theft crimes.  (See Pen. Code, §§ 459, 460, 530.5,

subds. (a), (c)(3), 470b, 475, subds. (a), (b), 472.)[1]  The court found true that Tang had two prison priors, a serious felony prior, and a strike prior.  (§§ 667.5, subd. (b), 667, subd. (a)(1), 667, subds. (b)-(i), 668, 1192.7, subd. (c), 1170.12.)  The court imposed a sentence of 15 years eight months.

Tang contends the court erred in denying his motion to suppress evidence found during a search of his vehicle when he was arrested for one of the burglary offenses.  He also contends that two of the burglary convictions should be reduced to misdemeanors under the new shoplifting statute.  (§ 459.5.)  We reject these contentions and affirm.

RELEVANT FACTS AND PROCEDURE

In December 2013, Lyn Le's home was ransacked and numerous items were taken. The stolen property was valued at about $25,000, and included many unique items such as jewelry and an iPad with a serial number.  The entry point appeared to be the kitchen window because it was open with the screen removed.  A fingerprint lifted from the kitchen window matched Tang's known fingerprint.

About three months after the Le residential burglary, on March 6, Tang entered a Dollar Smart store and tried to cash a $1,662.06 check made payable to himself.  The check was written by an escrow company.  When the store manager asked Tang if he had the escrow company's phone number for verification, Tang replied that he did not.  The manager made a photocopy of the check and Tang's driver's license, and told Tang he

---

[1]     All statutory references are to the Penal Code.

could return the next morning. The manager returned the check to Tang and he left the store.

The next day, Tang returned to the Dollar Smart store to cash the same check. A Dollar Smart employee called the escrow company and learned the check was fraudulent. The employee returned the check to Tang and he left.

About six weeks later, a law enforcement team was assigned to look for and detain Tang as a suspect in the Le residential burglary based on his fingerprint match. Shortly after, on April 17, two officers from the enforcement team stopped Tang while he was driving. The officers then arrested Tang for the Le burglary, and (as detailed below) searched his vehicle incident to the arrest. During the search, the officers found numerous items relating to identity theft and narcotics activities.

Within two months, an officer who was investigating another individual searched a storage unit, and found numerous items pertaining to identity theft crimes. The officer also found evidence concerning Tang's attempt to cash the fraudulent escrow check at the Dollar Smart store.

Tang was charged with 13 counts of criminal activity, including four burglary charges, eight identity-theft related offenses, and narcotics paraphernalia possession. The jury found Tang guilty of all but one of the charged counts. Of relevance here, the jury found Tang guilty of the Le residence burglary (§§ 459, 460), and of burglary relating to the Dollar Smart store (§ 459). On the Dollar Smart counts, the jury found that on March 6 and March 7, Tang unlawfully entered the store with the intent to commit theft in violation of section 459.

3

Based on the jury's verdicts and after finding true the alleged priors, the court imposed a sentence of 15 years eight months.

DISCUSSION

I. *Suppression Motion*

Before trial, Tang moved to suppress the evidence found during the April 17 search of his vehicle, arguing the warrantless search violated his Fourth Amendment rights. The prosecution opposed the motion based on several exceptions to the warrant requirement, including the exception set forth in *Arizona v. Gant* (2009) 556 U.S. 332 (*Gant*), permitting a warrantless automobile search when "it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." (*Id.* at p. 335.)

At the section 1538.5 hearing, the prosecution presented the testimony of several law enforcement officers involved in the Le burglary investigation and search of Tang's vehicle. After considering this evidence and counsel's arguments, the court found the *Gant* exception applied and denied Tang's motion.

Tang contends the trial court erred in denying his motion. In examining this contention, we first summarize the suppression hearing evidence, the parties' arguments, and the court's conclusions. We next describe the governing law and review standards. We then explain our conclusion that the court properly found the *Gant* exception to the warrant requirement applicable in this case.

A. *Factual Summary*

San Diego police detective Alejandra Carroll conducted a follow-up investigation of the December 2013 Le residential burglary. During this investigation, Detective

4

Carroll learned that someone entered the residence through a window when the victim was not home. Items stolen included Christmas presents, clothing, two designer purses, several items of expensive and unique jewelry (including a wedding ring), an iPad, and leather jackets. A latent print lifted from Le's kitchen window matched Tang's known print.

Detective Carroll conducted a records check and found Tang had previously been on probation and was transient. The records check also alerted her that license plate readers on city streets placed Tang's vehicle in numerous places throughout San Diego, which led the detective to believe that Tang's Department of Motor Vehicles address was inaccurate.

In early April 2014, Detective Carroll contacted the crime suppression team, including Sergeant David Bautista and Officer Sarah Sutter, and asked them to conduct surveillance and locate Tang. Detective Carroll told them that Tang was the suspect in a residential burglary based on a fingerprint lifted at the scene. She also gave the officers a description of the items stolen from the Le home. Detective Carroll told the team that Tang was "arrestable in public."

About one or two weeks later, on April 17, Sergeant Bautista located Tang while conducting vehicle surveillance and he directed Officer Sutter to stop Tang's vehicle. At the outset of the stop, Tang identified himself to Officer Sutter, but Tang was unable to provide her with a permanent address. Officer Sutter observed that Tang appeared nervous and behaved unusually by throwing his wallet on the passenger seat after the officer returned it to him. Officer Sutter testified that Tang's conduct made "the hair on

5

the back of my neck stand up." Officer Sutter arrested Tang for the Le residential burglary and put him in the back of her patrol car.

Sergeant Bautista then called Detective Carroll and informed her that they had stopped Tang's vehicle and arrested him, and that Tang denied having a current address. Detective Carroll asked Sergeant Bautista to search Tang's vehicle for property related to the Le burglary. Detective Carroll testified she believed the stolen items could be in Tang's vehicle because Tang appeared to be transient or living out of his car, a documents check had found no pawn slips in his name, and many of the stolen items would be difficult to pawn due to their traceable nature.

Officer Sutter then searched Tang's vehicle, looking for evidence relating to his burglary arrest. In the passenger compartment, she found a shaved key, SIM cards, a glass pipe with drug residue, a driver's license with defendant's picture but a different name, and a check from Pep Boys written to the same name that appeared on the driver's license. A search of the trunk revealed a locked briefcase and a bag containing blank checks. After obtaining a warrant to search the briefcase, the officers discovered it contained an "identity theft kit" consisting of stolen checks and tools for making counterfeit driver's licenses and checks.

B. *Parties' Arguments and Court's Ruling*

At the suppression hearing, the prosecutor argued the officers had probable cause to arrest Tang for the Le residence burglary based on the fingerprint evidence and the victims' statements they did not know Tang. With respect to the search, the prosecutor maintained the specific facts known to the officers made it reasonable to believe the items

6

stolen from the burglary would be in the car. The prosecutor acknowledged the four-month period between the burglary and the search, but said the officers had reason to believe Tang was still carrying these items because he was a transient, the items were unique and had not been recovered, and many of the items were small enough to hide in a vehicle.

Defense counsel countered that the arresting officers did not have probable cause to justify arresting Tang, and even if the arrest was proper, the warrantless vehicle search violated Tang's constitutional rights. Defense counsel emphasized that the evidence seized from the vehicle was not within Tang's reach because he had been handcuffed, and that the officers' testimony was vague and uncertain as to whether they were in fact looking for items related to the burglary.

After considering the evidence and arguments, the court denied the suppression motion. The court determined the officers had probable cause for the burglary arrest and the evidence established the officers had reasonable cause to believe the items stolen from the Le residence would be in the vehicle. The court found credible the officers' testimony that Detective Carroll communicated to the other officers the facts regarding the stolen items and her determination that the vehicle may contain those items.

### C. *Governing Principles*

The Fourth Amendment to the United States Constitution bans all unreasonable searches and seizures. (*People v. Jenkins* (2000) 22 Cal.4th 900, 971.) Searches conducted without a warrant are per se unreasonable unless an exception applies. (*Gant, supra*, 556 U.S. at p. 338.) The exception relevant here—search incident to a lawful

7

arrest—permits an officer to search a vehicle at the time of the occupant's arrest "when [the] arrestee is within reaching distance of the vehicle *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." (*Id.* at p. 346, italics added.)

The incident-to-arrest exception is premised on the rationale that the police are not "rummaging" to conduct a general exploratory search. (*Thornton v. United States* (2004) 541 U.S. 615, 629-632 (conc. opn. of Scalia, J.).) Rather, in this situation the police are engaging in an evidence-gathering function specifically tied to the arrestee, and in a context (a vehicle) involving a reduced expectation of privacy and a mobile instrumentality rather than a fixed premise. (*Ibid.*; see *Wyoming v. Houghton* (1999) 526 U.S. 295, 303-304.) When there is probable cause to arrest, the police do not need probable cause to search the vehicle, but need only a reasonable basis to believe the vehicle contains evidence relevant to the arrest offense. (*People v. Osborne* (2009) 175 Cal.App.4th 1052, 1065.)

In reviewing a trial court's denial of a suppression motion, we defer to the trial court's factual findings if they are supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) We independently decide whether, on the facts found, the search was reasonable under the Fourth Amendment. (*Ibid.*)

D. *Analysis*

On appeal, it is undisputed the officers had probable cause to arrest Tang for the Le burglary and thus they were entitled to conduct a warrantless search of the vehicle *if* there was a reasonable basis to believe the vehicle contained evidence relevant to that burglary. (*Gant, supra*, 556 U.S. at p. 346.) The record supports a finding there was a

reasonable basis for this belief. The detective who instructed the officers to conduct the search was aware the stolen items had unique features and had not been pawned or recovered, and that Tang was a transient who would have likely kept valuable items with him, rather than leaving them in places that could not be kept secure from third parties. Additionally, many of the items were small (wedding rings and other jewelry) that could easily be hidden in various places in an automobile. The arresting officer also observed Tang acted in an unusually nervous manner, leading a reasonable person to question whether Tang was hiding evidence of illegal activity in the vehicle.

Tang contends the fact the burglary occurred four months before the arrest means the burglary information was "stale" and therefore "unworthy" of *any* weight. Although the timing is certainly a relevant factor, it does not negate the basis for the officers' reasonable belief under the particular circumstances presented here. (See *People v. Gibson* (2001) 90 Cal.App.4th 371, 380 ["the question of staleness depends on the facts of each case"].) The facts relied upon by the officers logically applied regardless of the four-month time lapse. For example, the officers could reasonably believe that Tang would keep some of the items for his own use (e.g., the iPad) or that he would hold onto the items before pawning them due to their unique and therefore easily traceable nature. This inference was especially strong because none of the property stolen from the Le residence had been recovered or pawned. Additionally, because transients use their vehicles to store their property, it was reasonable for the officers to believe Tang would have kept at least some of the items with him, particularly the more valuable goods.

We find unhelpful Tang's reliance on a line of decisions refusing to uphold searches based on "stale" information. (See *Sgro v. United States* (1932) 287 U.S. 206; *Alexander v. Superior Court* (1973) 9 Cal.3d 387; *People v. Hulland* (2003) 110 Cal.App.4th 1646; *Hemler v. Superior Court* (1975) 44 Cal.App.3d 430.) The reasonable cause analysis requires a consideration of the particular facts known to the officer, and the holdings in those decisions are not applicable here. The cited cases involved dated information that drugs or other illegal contraband had *previously* been present in a residence, and—unlike here—there were no *additional* facts showing the items would have remained in place at the time of the search. (See, e.g., *Alexander*, at p. 393; *Hulland*, at p. 1648; *Hemler*, at p. 434.)

Equally significant, the cited decisions each concerned the issuance of a search warrant, which requires the higher probable cause standard as opposed to the lesser reasonableness standard applicable here. (See *People v. Osborne, supra*, 175 Cal.App.4th at pp. 1062-1065 ["*Gant* court specifically requires only a 'reasonable basis to believe' the vehicle contains relevant evidence, a standard less than full probable cause"].) Although a mere hunch is insufficient to meet the *Gant* reasonable cause standard, an officer need not have the same level of confidence in the foundational information required in a probable cause analysis.

Under *Gant*, the police officers needed only a reasonable basis to believe the vehicle could contain evidence relevant to the offense of arrest. (*Gant, supra*, 556 U.S. at p. 346.) There was a reasonable basis in this case. Based on this conclusion, we need not reach the issues raised by the Attorney General whether the officers acted in good faith,

10

or whether the inevitable discovery rule would have permitted the admissibility of some or all the evidence found during the search.

## II.  *Proposition 47 Shoplifting Crime*

Counts 3 and 5 pertained to the Dollar Smart criminal activity.  In each of these counts, the information alleged that Tang "unlawfully enter[ed] a building (Dollar Smart . . .) with the intent to commit theft, in violation of [section 459]."  Because Tang went into Dollar Smart twice with the purpose of cashing the fraudulent check, Tang was charged with the burglary crime in two separate counts.

Proposition 47, enacted by the voters on November 5, 2014, added section 459.5, which defines the crime of shoplifting and provides that this crime generally "shall be punished as a misdemeanor" except in certain specified situations not applicable here.  This code section defines shoplifting as "entering a commercial establishment *with intent to commit larceny* while that establishment is open during regular business hours, where the value of the property that is taken *or intended to be taken* does not exceed nine hundred fifty dollars ($950).  Any other entry into a commercial establishment with intent to commit larceny is burglary.  Shoplifting shall be punished as a misdemeanor [with exceptions not applicable here]."  (§ 459.5, subd. (a), italics added.)  Section 459.5, subdivision (b) provides that "Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting.  No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

Tang contends his entry into the Dollar Smart store with the intent to cash a fraudulent check was a form of larceny and thus met the definition of shoplifting under

11

section 459.5, subdivision (a). (See *People v. Triplett* (2016) 244 Cal.App.4th 824, 832-834.) We need not reach this issue in this case.[2] Even assuming Tang is correct, section 459.5 is inapplicable here because the value of the property that Tang intended to take was $1,662.06, which is more than the statutory maximum ($950).

In this regard, Tang's reliance on *People v Cuellar* (2008) 165 Cal.App.4th 833 is misplaced. In *Cuellar*, the court held the evidence supported a conviction for grand theft from the person of another where the defendant took a forged check from the hand of a store salesperson. (*Id.* at pp. 838-839.) The court reasoned the check did not have a value equal to the amount written on its face, but that for the purposes of a *grand theft* conviction, it nonetheless had some intrinsic value by virtue of the paper it was printed on and as a negotiable instrument that would entitle its holder to payment on demand if legally drawn. (*Ibid.*)

Unlike *Cuellar*, Tang's conviction was not based on the taking of a forged check, and thus the issue is not whether the check itself had value. Rather, the issue is whether Tang meets section 459.5's requirement that the "value of the property that is taken or *intended to be taken* does not exceed nine hundred fifty dollars ($950) . . . ." (Italics

---

[2]    This issue is pending before the California Supreme Court. (See *People v. Gonzales* (2015) 242 Cal.App.4th 35 [entry into a bank to cash a forged check was not larceny within the meaning of section 459.5], review granted Feb. 17, 2016, S231171; *People v. Vargas* (2016) 243 Cal.App.4th 1416 [entry into check cashing establishment with intent to commit theft by false pretenses by cashing a forged check was an intent to commit "larceny"], review granted Mar. 30, 2016, S232673; *People v. Barba* (2016) 2016 WL 349837 [entry into jewelry store with intent to commit a felony by attempting to sell stolen jewelry was different than an intent to commit "larceny"], review granted Apr. 13, 2016, S232534.)

added.) When Tang entered Dollar Smart, he intended to take $1,662.06 in cash. Therefore, he possessed the intent to take more than the statutory maximum when he committed the burglary, thereby rendering him ineligible for relief under section 459.5.

Accordingly, we reject Tang's contention his burglary convictions relating to the Dollar Smart store should be reduced to misdemeanor offenses.

DISPOSITION

Judgment affirmed.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.