Filed 5/6/13  P. v. Jackson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TONY RENE JACKSON,<br><br>    Defendant and Appellant. | B242495<br><br>(Los Angeles County<br>Super. Ct. No. TA119482) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Eleanor J. Hunter, Judge.  Affirmed.

David M. Nisson; David J. Scharf for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Tony Rene Jackson appeals from the denial of his motion to quash the search warrant and his motion to suppress evidence under Penal Code section 1538.5.[1] After denial of his motions, defendant agreed to plead no contest to one count of possession of a firearm by a felon with four prior convictions (§ 12021, subd. (a)(1)) (count 3) in exchange for a sentence of four years.[2] The sentence consisted of the midterm of two years, doubled to four years due to defendant's prior conviction of a serious felony. (§§ 1170.12, subd. (a) – (d); 667, subd. (b) – (i).)

Defendant appeals on the grounds that the trial court erred by denying his motion to suppress evidence because the facts alleged in the affidavit did not justify the search, and the good faith exception did not apply.

## FACTUAL AND PROCEDURAL HISTORY

Joe Cummings had known defendant for several years.[3] Cummings believed defendant was angry with him for an incident that occurred at the funeral of Cummings's mother.[4] Cummings did not allow defendant to bring a gun into the funeral.

Cummings made a police report about an incident that occurred on March 25, 2011, when he encountered defendant at a store. Defendant approached Cummings and said, "I got my gun with me tonight." Defendant left the store and waited in the parking lot, and Cummings saw that defendant was armed with a gun. Store employees called police, and defendant fled. When the police arrived, Cummings provided the officers

---

[1]    All further references to statutes are to the Penal Code unless stated otherwise.

[2]    Subsequent to defendant's plea, the People moved to dismiss one count of making criminal threats (§ 422) with an arming enhancement (§ 12022, subd. (a)(1)) (count 1); an additional count of possession of a firearm by a felon with four priors (count 2); one count of possession of ammunition (§ 12316, subd. (b)(1)) (count 4), and a serious felony allegation (§ 667, subd. (a)(1)).

[3]    Unless otherwise indicated, the facts are obtained from the search warrant and affidavit. No witnesses testified at the hearing on defendant's motions.

[4]    At the hearing, defense counsel stated that the funeral occurred five years prior to the March 2011 incidents.

2

with some information about defendant. The officers attempted to pursue and apprehend defendant, but were unsuccessful. The officers returned to the store, but Cummings had already gone.

On March 26, 2011, Cummings was in front of his home when he saw defendant driving a silver or gray Chrysler 300. Defendant stopped in front of Cummings's home and said while holding a gun, "Nigga I'm gonna kill your punk ass!" Cummings was in fear and called the police.

On April 26, 2011, Cummings went to the police station. It appears he officially reported the March 25, 2011 incident at this time. On June 14, 2011, Cummings returned to the police station and met with Los Angeles Police Detective Patrick Flaherty.

On August 4, 2011, a magistrate approved Detective Flaherty's search warrant and affidavit. The transcript of the preliminary hearing shows that Detective Flaherty obtained and served a search warrant at defendant's home on August 10, 2011, and found a loaded .25-caliber semiautomatic pistol.

## DISCUSSION

### I. Defendant's Argument

Defendant asserts that Detective Flaherty failed to aver sufficient fresh facts to support the search warrant. The affidavit recited the opinions and conclusions of the affiant, and the information from Cummings was inadequate and unreliable. Defendant also argues that the detective could not rely on the good faith exception under the circumstances. Therefore, all evidence should have been suppressed.

### II. Contents of the Warrant

The record shows that the warrant was obtained to search defendant's residence and any vehicles connected to the occupants of that residence. The items to be seized were any and all firearms or pieces of firearms and firearm paraphernalia, any evidence of street gang membership, any safe, and any items tending to establish the identity of the persons in control of the premises. Detective Flaherty summarized his experience as a gang officer, and stated that he was assigned to the police department's Division Gang Impact Team.

In the statement of probable cause, Detective Flaherty summarized the two police reports made by Cummings—one describing the March 26, 2011 incident, and the other describing the March 25, 2011 incident. The affidavit stated that Cummings knew defendant as a hardcore gang member of the Blood Stone Villains. Detective Flaherty then stated that he had determined defendant's ownership of a vehicle and the registration address by means of department resources. He had shown Cummings a photographic lineup, and Cummings had identified defendant as the person who threatened to kill him with a gun. Detective Flaherty stated that defendant had several prior arrests for violent crimes including rape, robbery, attempted murder, narcotics violations, and weapons violations, and he was a convicted felon.

The statement of probable cause further attested, "Whether or not the above firearm is recovered, I believe that above items tend to show that a firearm existed and may have once been located in a place to which the suspect had access, and that these items would tend to connect the suspect to the weapon sought. I further note that in my experience, the above items are not normally disposed of after the commission of a crime, and that they are therefore still likely to be found in any location or vehicles to be searched, or on the person of any suspect to be searched pursuant to this warrant."

## III. Motion Hearing

At the hearing on defendant's motions, defense counsel argued that the information was 131 days old, there were no facts to indicate defendant was a current gang member, and no facts to say why a gun was likely to be found at defendant's home when the only place it had been seen was in a car in a different city. Moreover, the officer expressed that a firearm might not even be found. The prosecutor argued that the defense had cited only drug-related cases as authority, and a firearm is a personal possession intended for reuse and was of "enduring utility."

In making its ruling, the trial court first noted that the warrant did contain some indication that defendant was a gang member, since it contained the victim's statement that he knew defendant as a hardcore gang member who used the moniker "Sinbad." The court stated, "I do think there is a difference between guns and drugs, and I think the

4

cases note that, that there is a difference between the two . . . ." The fact that defendant had been seen with the gun several times, albeit over a long period of time, was a circumstance of the crime that indicated it was a continuing offense. The defendant's remark to the victim that he had *his* gun implied that defendant had a possessory interest in it. An additional factor was defendant's criminal history. Under the totality of the circumstances, the trial court believed that the magistrate had sufficient grounds to deem there was probable cause. The court denied the motion to quash and agreed that, in the alternative, the good faith exception applied. The trial court denied the motion to suppress.

## IV. Relevant Authority

Probable cause exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238.) "Because a search conducted pursuant to a search warrant is presumed lawful, the burden of establishing the invalidity of the search warrant rests upon the defendant." (*People v. Lazalde* (2004) 120 Cal.App.4th 858, 865.) In determining the sufficiency of an affidavit for the issuance of a search warrant, the test of probable cause is whether the facts in the affidavit would lead a person of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*People v. Kraft* (2000) 23 Cal.4th 978, 1041.)

"The general rule is that information that is remote in time may be deemed to be stale and therefore unreliable. [Citation.]" (*People v. Gibson* (2001) 90 Cal.App.4th 371, 380.) However, "[t]he question of staleness turns on the facts of each particular case. [Citations.] If circumstances would justify a person of ordinary prudence to conclude that an activity had continued to the present time, then the passage of time will not render the information stale. [Citation.]" (*People v. Hulland* (2003) 110 Cal.App.4th 1646, 1652.) There is no bright-line rule defining a point in time—whether it be in days, weeks, or months—at which information in an affidavit must be considered too stale to support probable cause. (*People v. Carrington* (2009) 47 Cal.4th 145, 163-165.)

5

"The magistrate's determination of probable cause is entitled to deferential review. [Citation.]" (*People v. Carrington*, *supra*, 47 Cal.4th at p. 161; *People v. Kraft*, *supra*, 23 Cal.4th at pp. 1040-1041.)  A magistrate's determination "'is to be sustained by reviewing courts as long as there was a "substantial basis" for his conclusion that the legitimate objects of the search were "probably present" on the specified premises.'" (*Kraft*, at pp. 1040-1041; *Skelton v. Superior Court* (1969) 1 Cal.3d 144, 150; see also *Illinois v. Gates*, *supra*, 462 U.S. at pp. 238-239.)  "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (*United States v. Ventresca* (1965) 380 U.S. 102, 109; see also *People v. Weiss* (1999) 20 Cal.4th 1073, 1082-1083.)

## V.  Trial Court Properly Denied Motions

We disagree with defendant and conclude that, given the nature of the evidence and the information supplied by the victim, Detective Flaherty's affidavit asserted a sufficient basis for the trial court to uphold the magistrate's finding.  The warrant was not invalidated by stale information, despite the lapse of time between the last sighting of defendant with the gun and the request to search.

The most significant factor in support of this conclusion is the fact that the nature of the item to be sought was a firearm, with which defendant had been seen on at least two occasions, albeit far apart.  Cummings may have seen it on a third occasion—in the store parking lot—and it is clear that defendant at least alluded to having his gun at that time.  Although defendant repeatedly points out that defendant was seen with the firearm miles from his home, we do not believe this fact is significant.  A firearm is portable and is usually meant to be in the same place as its owner, wherever the owner may be.  If an individual brandishes or uses a firearm, the most logical places to look for that firearm are on his person, in his home, or in his car.  This constitutes a reasonable inference rather than "speculation and conjecture," as defendant alleges.

In *United States v. Bowers* (9th Cir. 1976) 534 F.2d 186 (*Bowers*), where the defendant was charged with the shooting death of a park ranger, the Ninth Circuit

6

concluded that the affidavit was sufficient, "though by no great margin." (*Id.* at pp. 188, 190.) The court based its conclusion on the circumstances of the murder and the evidence at the scene, which indicated that other evidence, including guns and ammunition, would likely be found where the perpetrators lived. (*Id.* at pp. 190-192.) The court found that the magistrate properly concluded that there was a reasonable ground to believe the items were located at a house to which the defendant was connected, since the objects sought were of the type likely to have been kept for the six weeks that elapsed between the murder and the search, and the items would probably be found where the perpetrators lived. (*Id.* at pp. 192-193.) This was true even though "'the nexus between the items to be seized and the place to be searched rested not on direct observation, as in the normal search-and-seizure case, but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely' to conceal the property sought." (*Id.* at p. 192)

Defendant argues that the facts of the instant case are comparable to those of *United States v. Charest* (1st Cir. 1979) 602 F.2d 1015 (*Charest*), a case that criticized the holding in *Bowers*. Unlike *Bowers*, the *Charest* court found that a warrant was invalid because the affidavit did not provide a sufficient nexus between the firearm sought and the defendant's premises. (*Charest*, at pp. 1015-1016.) An eyewitness to the murder in the murder victim's home identified the defendant as the shooter, and a police officer obtained a warrant for the defendant's home, where a gun was found in a bedroom closet. (*Id.* at p. 1016.) The *Charest* court stated that there was nothing in the affidavit from which a factual finding could be made that the gun used in the shooting was probably located at defendant's address, since "[c]ommon sense tells us that it is unlikely that a murderer would hide in his own home a gun used to shoot someone." (*Id.* at p. 1017.) The court had found no case where "a search warrant was issued for a person's home on the sole basis that a handgun had been used by that person in the commission of the type of crime where the bullets used could be traced to the gun." (*Ibid.*) The court noted the *Bowers* case, but stated, "Even if we accept *Bowers* as good precedent, and as

7

to this we have some doubt, it is different from our situation where the affidavit states that the property for which the issuance of a search warrant is sought is a single handgun." (*Ibid.*)  The *Charest* court also found it was contrary to common sense to expect a murderer to keep the murder weapon in his own home for 16 days, which was the time lag between the murder and the date of the affidavit.  (*Id*. at p. 1018.)

We believe *Charest* is distinguishable from the instant case.  Defendant was not accused of murder, and a particular handgun (e.g., "capable of firing a 38 calibre projectile") was not sought in this case.  (See *Charest*, *supra*, 602 F. 2d at p. 1016.)  Although the *Charest* court might be correct that a murderer would not logically keep in his home a murder weapon that could be subjected to ballistic tests, in the instant case, defendant referred to the gun as his gun, and the crime he was accused of in relation to that gun was related principally to its illegal possession, not a murder.  An individual who carries a gun and uses it to make himself feared or for protection against enemies is likely to keep the gun nearby rather than to continually dispose of his guns and acquire new ones.  And the most likely places the individual would keep the gun are at his home and in his car.  We believe the *Bowers* ruling was correct under the totality of the circumstances in that case, and we believe the totality of the circumstances in the instant case favors the ruling by the trial court.

It is true that "[t]he freshness of the information on the basis of which a warrant is sought and obtained, is one of the factors which determine whether there is probable cause to believe that the articles covered by the warrant will be found at the place that is to be searched." (*People v. Hernandez* (1974) 43 Cal.App.3d 581, 586.)  Nevertheless, if circumstances would justify a person of ordinary prudence to conclude that an activity had continued to the present time, then the passage of time would not render the information stale.  (*People v. Hulland*, *supra*, 110 Cal.App.4th 1646, 1652.)  As noted previously, courts have refrained from establishing a bright-line rule for determining staleness.  Information concerning someone who is suspected of possessing firearms illegally is not stale, "even several months later," because it is reasonable, and adheres to common sense, to believe that "individuals who possess firearms tend to keep them for

8

long periods of time." (*U.S. v. Neal* (8th Cir. 2008) 528 F.3d 1069, 1074; see also *U.S. v. Kennedy* (8th Cir. 2005) 427 F.3d 1136, 1142, fn. 5; *Bowers*, *supra*, 534 F.2d at pp. 192-193.) Additionally, courts have upheld warrants despite delays between evidence of criminal activity and the issuance of a warrant when there is reason to believe that criminal activity is ongoing or that evidence of criminality remains on the premises. (*People v. Carrington*, *supra*, 47 Cal.4th at pp. 163-164; *Hulland*, at p. 1652.) Defendant's apparent habit of carrying a gun with him constitutes ongoing criminal activity.

Defendant attempts to cast doubt upon Cummings's reliability by stating that no explanation was given as to why Cummings never told the police about the March 25 incident when he "ostensibly" reported the March 26 incident. As defendant acknowledges, Cummings was a citizen informant (rather than a police informant, paid or otherwise), and he was therefore presumptively reliable. (*People v. Ramey* (1976) 16 Cal.3d 263, 268-269.) According to the statement of probable cause, when Detective Flaherty met with Cummings on June 14, 2011, Cummings had reported the two previous incidents, which had two separate case numbers. Cummings spoke with police at the time of the March 25 incident, and it is possible he believed that sufficient. In any event, in determining probable cause, an informant's reliability must be reviewed under a totality of the circumstances test. (*Illinois v. Gates*, *supra*, 462 U.S. at pp. 230-231.) The evidence presented in the search warrant affidavit "'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" (*Id*. at p. 232.) For example, "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." (*Id*. at p. 234.)

Defendant also makes much of the fact that the affidavit refers to a "Victim Perry," when no other information about this victim or witness is provided. The affidavit summarizes police report No. DR 1118-10670, and states, inter alia, that "On April 26, 2011 at 1330 hours Victim Perry arrived at Southeast station to make a police report

9

about an incident that occurred on March 25, 2011." Immediately before the summary of defendant's two police reports, the detective stated that he had met with Cummings on June 14, 2011, and Cummings "had reported two previous incidents to the police reference Addendum "A" DR 118-08798 and Addendum "B" *DR 1118-10670* which occurred on March 25 and March 26 of 2011 in the city of Los Angeles." We agree with respondent that the reference to Perry was most likely made in error by Detective Flaherty, and the detective was referring to Cummings in that one and only mention of a victim Perry. Courts should not invalidate search or arrest warrants by interpreting an affidavit in a hypertechnical manner rather than in a common sense manner. (*United States v. Ventresca*, *supra*, 380 U.S. 102, 108.) Moreover, as noted by respondent, defendant did not question the reference to Perry in his written motion or during the hearing and has therefore forfeited any claim of unreliability based on a single mention of this name. (*People v. Williams* (1999) 20 Cal.4th 119, 136.)

Defendant also criticizes Detective Flaherty's inclusion of a summary of his background as a gang officer in the warrant application. We note that Detective Flaherty did not include information on his experience in the statement of probable cause. Moreover, a magistrate may consider the affiant's opinion, providing that the affiant has sufficient training and experience, when making a probable cause determination. (*People v. Kershaw* (1983) 147 Cal.App.3d 750, 760.) In the instant case, the detective's training and experience was not offered as a substitute for a lack of evidentiary nexus between the location to be searched and probable cause to believe the search would produce evidence of the suspected criminal activity, as defendant claims. Rather, the information on the detective's background was a permissible and necessary component of the totality of the circumstances. As the trial court observed, defendant's remark that he had his gun with him indicated a possessory interest in the gun, which corroborated the detective's opinion that gang members tended to keep their guns, and which factored into the probable cause assessment.

Finally, we note that the court also took into consideration defendant's criminal record, which included prior weapons violations as well as several violent crimes. A

history of similar offenses is also a factor to be considered in the determination of probable cause. (See *People v. Kershaw*, *supra*, 147 Cal.App.3d at p. 760.)

The information in the affidavit must be taken together and read in a common sense manner. (See, e.g., *People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1783.) Even if this were a doubtful case, it has been held that doubtful cases of probable cause should be determined by the preference accorded to warrants. (*United States v. Ventresca*, *supra*, 380 U.S. at p. 109.) "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." (*Illinois v. Gates*, *supra*, 462 U.S. at p. 232.) "It is less than proof beyond a reasonable doubt [citation]; less than a preponderance of the evidence [citation]; and less than a prima facie showing [citation]." (*Tuadles*, at p. 1783.) Viewing the totality of the circumstances, we agree with the trial court's conclusion that the affidavit established a fair probability that firearms would be found at defendant's residence or inside his vehicle, and that the affidavit did not contain information so stale that it could not support a reasonable probable cause determination. Accordingly, we need not address appellant's claim that the good faith exception to the exclusion requirement is inapplicable. The motion to suppress evidence was properly denied.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

11