[No. A121195. First Dist., Div. Four. July 14, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER LEE OSBORNE, Defendant and Appellant.

## COUNSEL

Clifford Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Sharon Wooden and John H. Deist, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SEPULVEDA, J.**—Defendant was convicted[1] of possession of a controlled substance for sale (Health & Saf. Code, § 11378) with an enhancement for being personally armed with a firearm (Pen. Code, § 12022, subd. (c)), being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)), and being a felon in possession of ammunition (Pen. Code, § 12316, subd. (b)(1)),[2] with an enhancement for being personally armed with a firearm (Pen. Code, § 12022, subd. (a)(1)), and was sentenced to six years in state prison.[3] He appeals, challenging the trial court's denial of his motion to suppress pursuant to Penal Code section 1538.5. We find no error and affirm.

---

[1] Defendant waived his right to a jury trial and the court conducted a bench trial.

[2] Two prior prison conviction allegations (Pen. Code, § 667.5, subd. (b)) and a prior controlled substance conviction allegation (Health & Saf. Code, § 11370.2) were also found true.

[3] The sentence consisted of the midterm of two years on the possession of a controlled substance charge and four years for the firearm enhancement. The sentences on counts two and three were stayed pursuant to Penal Code section 654, and the prior conviction enhancements were also stayed. The execution of sentence was suspended and defendant was committed to the California Rehabilitation Center under Welfare and Institutions Code section 3051.

## BACKGROUND

The following evidence was adduced at the motion to suppress.[4] Officer Michael Malone of the Antioch Police Department was on patrol with his partner Officer Ryan Andelin on the afternoon of December 21, 2006. As they drove on West Sixth Street they observed defendant standing next to a green Lexus. The trunk of the Lexus was open and defendant appeared to be handling exposed wires in the trunk. Defendant looked up and, apparently seeing the patrol car, immediately shut the trunk of the Lexus and walked away from it. Defendant appeared "real nervous."

Officer Malone saw a second man in a driveway nearby; this individual ran when he observed the patrol car. The officers pursued this individual (later identified as "Pierce") and quickly apprehended him. Defendant approached the officers from the rear and Officer Malone ordered him to step back. Malone was concerned because defendant was quite large—approximately six feet tall and 240 pounds. Malone indicated that defendant was larger in stature than he.

Defendant walked back to the Lexus, about 10 yards away; he sat in the driver's seat. Meanwhile, Officer Andelin told Officer Malone that he thought defendant was on parole. Malone walked over to the Lexus and looked inside, observing that the interior front passenger door panel was stripped off, and that the trim on the dashboard around the stereo system had also been removed. There were loose wires protruding from both areas, and tools, including screwdrivers and pliers, were strewn about in the front passenger area. Officer Malone, who had been a police officer for some four years, suspected that defendant was burglarizing the Lexus, based upon his knowledge from investigating "thousands" of auto burglaries. While the type of tools observed could have been consistent with doing repair work on a car, they were also consistent with use in burglarizing a vehicle.

Officer Malone was concerned for his safety and asked defendant to get out of the Lexus; defendant complied. Malone prepared to patsearch defendant by placing defendant's hand toward the rear of his body, and noticed that defendant was "real nervous." The officer therefore handcuffed defendant and asked if he had a gun. Defendant indicated that he had a gun in his left front pants pocket and volunteered that he had been released from parole recently.

---

[4] As the denial of this motion is the only issue raised on appeal, we have taken the summary of facts from the transcript of that proceeding.

When Officer Malone patted down defendant's left front pants pocket, he did not feel a gun, but did locate one in his right front pants pocket. Malone removed a loaded nine-millimeter semiautomatic handgun.

Officer Malone then removed a backpack from the right front floor of the Lexus and opened it, finding a pouch containing a loose, white crystal substance, a green plantlike substance, and several pills. He learned that the Lexus was registered to defendant and that defendant had been released from parole a few months earlier. Initially, Malone said he learned this information "contemporaneous with" the detention, but later indicated that it was shortly after the arrest of defendant. Malone did know that defendant owned the Lexus prior to his opening of the backpack. His patsearch of defendant occurred within 20 to 30 seconds of his approaching the Lexus.

Defendant testified at the motion to suppress, and he indicated that after he exited the Lexus at the officer's request, as soon as Malone started to move his hand behind his back, defendant raised his hands in the air and said, "I am not on probation or parole. I have my discharge card in my wallet. I refuse consent and you don't have a right to search me." Defendant testified that Officer Malone replied, "Oh, it doesn't matter," and then handcuffed and searched him.

Based on this evidence, the trial court denied defendant's motion to suppress, finding that the officer was justified in detaining defendant and in patsearching him. Once the officer located the gun on defendant's person, he had probable cause to arrest him and search the vehicle pursuant to arrest.

## DISCUSSION

Defendant contends that Officer Malone's actions in detaining him and conducting a patsearch were in violation of the Fourth Amendment. Our standard of review on such issues is clear: we defer to the trial court's factual findings, whether express or implied, if supported by substantial evidence, and independently apply the law in evaluating the reasonableness of the police conduct. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) Applying these standards, we disagree with defendant's contentions and affirm the decision of the trial court.

## A. *Initial detention of defendant was justified.*

█ Defendant first contends that Officer Malone was not justified in detaining him. A suspect may be detained if an officer has a reasonable suspicion that criminal activity is afoot and that the suspect is connected with it. (*Terry v. Ohio* (1968) 392 U.S. 1, 30 [20 L.Ed.2d 889, 88 S.Ct. 1868] (*Terry*).) The officer " 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' " his action. (*People v. Glaser, supra,* 11 Cal.4th at p. 363.) This is a totality of the circumstances evaluation, in light of the officer's training and experience. (*United States v. Cortez* (1981) 449 U.S. 411, 417–418 [66 L.Ed.2d 621, 101 S.Ct. 690].) As our high court has reiterated, "we have said repeatedly that they [reviewing courts] must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing. [Citation.] This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' [Citations.] Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop [citation], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard [citation]." (*United States v. Arvizu* (2002) 534 U.S. 266, 273–274 [151 L.Ed.2d 740, 122 S.Ct. 744].) Finally, as the court in *Arvizu* cautioned, a reviewing court should not apply a "divide-and-conquer" analysis in determining if the officer's conduct was reasonable, as factors which by themselves were " 'quite consistent with innocent' " activity may collectively amount to reasonable suspicion. (*Id.* at pp. 274–275.)

Applying this standard of review, we find that Officer Malone's initial detention of defendant was more than reasonable. Defendant was first observed standing by the open trunk of the Lexus, holding loose wiring. Defendant looked up and saw the police car; he then quickly closed the trunk and walked away from the car. Malone indicated defendant appeared "real nervous."[5] Another individual who was close by ran upon seeing the officers. Defendant came up behind the officers as they detained this individual. Defendant obeyed Officer Malone's command to step back, and went and sat in the Lexus. When Malone contacted him there, the officer observed several

---

[5] As the court observed in *Illinois v. Wardlow*, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. [Citations.] Headlong flight—wherever it occurs—is the consummate act of evasion . . . ." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [145 L.Ed.2d 570, 120 S.Ct. 673].)

tools (screwdrivers, pliers, etc.) strewn across the passenger compartment and the right side interior passenger door panel "was completely stripped off with exposed wires." The trim in the dashboard area surrounding the stereo system had been removed and wires were exposed there, as well. Based upon these facts, Officer Malone, who had been a police officer for some four years and who had participated in thousands of auto burglary investigations, suspected that defendant was either burglarizing or stripping the Lexus. He ordered defendant out of the vehicle and detained him for further investigation. Under the totality of these circumstances, Officer Malone's action in detaining defendant was more than reasonable. Indeed, a reasonable officer would arguably have been remiss in his duties had he not detained under these circumstances.

B. *Patsearch of defendant was justified.*

Defendant next contends that Officer Malone was not justified in conducting a patsearch of his person. As Officer Malone explained, he conducted the patsearch because "individuals involved in the stripping and/or burglary of cars or . . . involved in auto thefts are often armed with objects or dangerous instruments, which could be a hazard to me. [¶] Also there was [*sic*] pliers or screwdrivers adjacent to his arm wingspan, which could be potentially dangerous and threatening toward me."

The basic rule is agreed upon by all: in order to patsearch a suspect, an officer must have a reasonable suspicion that he is presently armed and dangerous. (*Terry, supra,* 392 U.S. 1.) "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a limited patsearch "to determine whether the person is in fact carrying a weapon." (*Id.* at p. 24.) The difficulty arises in its application, as it is a totality of the circumstances test, which is of necessity fact driven. Courts have consistently recognized that certain crimes carry with them the propensity for violence, and individuals being investigated for those crimes may be patsearched without further justification. As Justice Harlan noted in his concurring opinion in *Terry*, where it is determined that a detention is reasonable, "the right to frisk must be immediate and automatic if the reason for the stop is . . . an articulable suspicion of a crime of violence. Just as a full search incident to a lawful arrest requires no additional justification, a limited frisk incident to a lawful stop must often be rapid and

routine. There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet." (*Id.* at p. 33 (conc. opn. of Harlan, J.).)

Automobile burglary is not, however, recognized as a classic violent felony. That fact does not end our inquiry, as case law that has developed since the decision in *Terry, supra,* 392 U.S. 1, has expanded an officer's ability to conduct a patsearch when investigating crimes other than those that would be recognized as violent by definition. Thus, cases have recognized that drug trafficking so often involves weapons and violence that an officer may reasonably suspect that an individual involved in such activity is presently armed and dangerous, and thus may be subjected to a patsearch. (See, e.g., *People v. Limon* (1993) 17 Cal.App.4th 524, 535 [21 Cal.Rptr.2d 397]; *People v. Lee* (1987) 194 Cal.App.3d 975, 983 [240 Cal.Rptr. 32].)[6] Similarly, cases have upheld so-called "automatic" patsearches where an individual is suspected of burglary. (See Harris, *Frisking Every Suspect, supra,* at pp. 27–28.) The reasoning of this line of cases can find its root in Justice Harlan's concurring opinion in *Sibron v. New York* (1968) 392 U.S. 40, 74 [20 L.Ed.2d 917, 88 S.Ct. 1889]. As Justice Harlan explained, the right to frisk may be basically "automatic" when an officer has stopped a person reasonably suspected of a crime "whose nature creates a substantial likelihood that he is armed." (*Ibid.*) As one respected commentator on criminal procedure has summarized, "courts have been inclined to view the right to frisk as being 'automatic' whenever the suspect has been stopped upon the suspicion that he has committed . . . a type of crime for which the offender would likely be armed, whether the weapon would be used to actually commit the crime, to escape if the scheme went awry, or for protection against the victim or others involved." (4 LaFave, Search and Seizure (4th ed. 2004) § 9.6(a), p. 625.)

The burglary cases referenced above are most instructive to the current case, as they point out that not only may an individual suspected of such a crime reasonably be anticipated to be armed with a weapon (such as a knife or a firearm), but also may reasonably be expected to possess "tools of the trade" such as screwdrivers and pry tools, which may easily be used as weapons. As the court explained in *People v. Myles* (1975) 50 Cal.App.3d 423, 430 [123 Cal.Rptr. 348], "Suspecting that appellant might possibly be a burglar, [the police officer] acted reasonably and properly in conducting a pat-down search for his own protection. It is reasonable for an officer to believe that a burglar may be armed with weapons, or tools such as knives

---

[6] For a compilation of cases nationwide that have permitted patsearches in major drug trafficking cases, as well as ordinary drug sales cases, see Harris, *Frisking Every Suspect: The Withering of* Terry (1994) 28 U.C. Davis L.Rev. 1, 5, 23–27.

and screwdrivers which could be used as weapons, and that a pat-down search is necessary for the officer's safety. (See *People* v. *Smith* [(1973)] 30 Cal.App.3d 277, 279–280 [106 Cal.Rptr. 272].)" Similarly, in *People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1230 [42 Cal.Rptr.2d 18], the court upheld a patsearch, finding that the officer reasonably feared that the suspect "might have been a burglar, and also fearing for his own safety because he was alone with two detainees." As the court explained, "Under these circumstances, a reasonably prudent person would fear a possible burglar and burglary suspects frequently carry weapons. [Citations.]" (*Ibid.*)

██ A similar analysis holds true for automobile burglary and automobile theft suspects, as they use tools that can readily be used as weapons. (See *People v. Simons* (1996) 42 Cal.App.4th 1100, 1107 [50 Cal.Rptr.2d 351] [screwdriver, listed as burglar tool under Pen. Code, § 466, was deadly weapon as used by defendant initially stopped for traffic violations at 3:00 a.m.].) In the present case, Officer Malone was justified in conducting a patsearch of defendant. Malone reasonably suspected that defendant was involved in burglarizing or stripping the Lexus. He had already observed tools, including screwdrivers, in close proximity to defendant when defendant was sitting in the vehicle. Additionally, Malone indicated that defendant was acting "real nervous." Defendant's size also justified the officer's general concern for his safety. Malone was dealing with defendant on his own, while his partner was occupied with the detention of a possible accomplice. Finally, his partner had informed Malone that defendant might be on parole. All of these circumstances, when considered together, support our conclusion that Officer Malone's conduct in patsearching defendant was reasonable.

██ As one treatise has explained, "what is required is that the officer's observations lead him 'reasonably to conclude . . . that the persons with whom he is dealing may be armed and presently dangerous.' The use of the phrase 'may be' makes it apparent that it will suffice that there is a substantial possibility the person is armed, and that there need not be the quantum of evidence which would justify an arrest for the crime of carrying a concealed weapon. Sometimes this possibility may be said to exist merely because of the nature of the crime under investigation, while on other occasions something in addition will be required, such as a bulge in the suspect's clothing, a sudden movement by the suspect toward a pocket or other place where a weapon could be hidden, or awareness that the suspect was armed on a previous occasion. The test is an objective one, and thus the officer need not later demonstrate that he was in actual fear." (2 LaFave et al., Criminal Procedure (3d ed. 2007) § 3.8(e), pp. 339–340, fns. omitted.) Here, the nature of the crime, along with additional factors, supported the patsearch. ██ In determining the reasonableness of the officer's conduct under the Fourth Amendment, we must bear in mind that a patsearch, while considered a search, is still a reduced intrusion upon the individual's Fourth Amendment

rights. "The minimal intrusion of a patdown under these circumstances is a reasonable response to the potential danger if these 'necessary measures [are not taken] to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.' " (*People v. Castaneda, supra,* 35 Cal.App.4th at p. 1230.) Under the totality of circumstances in the present case, the patsearch was supported by a reasonable suspicion that defendant was presently armed and dangerous.

C. *Handcuffing defendant was not a de facto arrest.*

Defendant contends that when Officer Malone handcuffed him, it converted his detention into a de facto arrest, requiring probable cause. Officer Malone testified that when he started to put defendant's hand to the rear of his body in order to conduct the patsearch, he observed that defendant was "real nervous." Malone immediately felt defendant tense "as if he were attempting to remove his hand from my grasp." That caused Officer Malone concern as defendant was larger than he, and he feared that defendant might be able to break free of his grasp and assault him. Malone therefore handcuffed defendant before performing the patsearch.

 Under the circumstances, we find nothing unreasonable about the officer's conduct in this regard. As defendant concedes, the handcuffing of a detained individual does not necessarily convert the detention into a de facto arrest. (*In re Antonio B.* (2008) 166 Cal.App.4th 435, 441 [82 Cal.Rptr.3d 693].) As indicated in *Antonio B.,* a police officer may handcuff a detainee without converting the detention into an arrest if the handcuffing is brief and reasonably necessary under the circumstances. (*Ibid.*) Officer Malone's handcuffing of defendant in order to safely effectuate the patsearch meets these criteria.

D. *Search of automobile was permissible.*

Finally, defendant argues that the search of his vehicle without a warrant was a violation of the Fourth Amendment. We disagree.

As indicated, Officer Malone's detention and patsearch of defendant were reasonable, as was his handcuffing of defendant in order to complete the patsearch. Defendant indicated that he had a gun on his person, which Officer Malone located during the patsearch. Once that firearm was located, the officer had probable cause to arrest defendant for being a felon in possession of a firearm, as defendant had himself informed the officer that he was recently released from parole. The vehicle could then be searched incident to that arrest. (*New York v. Belton* (1981) 453 U.S. 454, 460 [69 L.Ed.2d 768, 101 S.Ct. 2860] (*Belton*).)

At oral argument in this matter, defendant contended that the search of the automobile incident to his arrest was in violation of the Fourth Amendment, citing the recent United States Supreme Court case of *Arizona v. Gant* (2009) 556 U.S. ___ [173 L.Ed.2d 485, 129 S.Ct. 1710] (*Gant*). In *Gant*, the court clarified its prior authority regarding searches incident to the lawful arrest of a recent occupant of a vehicle, indicating that the passenger compartment of such a vehicle may not be searched for weapons if a suspect is handcuffed and in the backseat of the patrol vehicle, as a suspect who has been so secured may no longer access the interior of the vehicle. (*Gant*, at p. ___ [173 L.Ed.2d at p. 491].)[7] The court in *Gant* additionally held, however, that "[a]lthough it does not follow from *Chimel* [*v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]], we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' [Citation.]" (556 U.S. at p. ___ [173 L.Ed.2d at p. 496].)[8]

The *Gant* court indicated that *Chimel v. California, supra*, 395 U.S. 752 (*Chimel*) defined the interpretation of *Belton, supra*, 453 U.S. 454, formerly the leading case discussing the applicability of the search incident to arrest exception to the search of vehicles. *Chimel*, the court stated, limited the scope of a search incident to arrest to the person of the arrested individual and the area within his immediate control, defined as the area into which the suspect might reach to grab a weapon or contraband. (*Gant, supra*, 556 U.S. at p. ___ [173 L.Ed.2d at p. 491].) This limitation was based upon the purpose behind the search incident to arrest exception to the search warrant requirement—to permit officers taking a suspect into physical custody to assure that he is not armed or in possession of destructible evidence that might be concealed or destroyed. Thus, the *Gant* court reasoned, since a suspect who is handcuffed and in a patrol car can no longer reach into the passenger compartment of the

---

[7] From the record in this matter, it is not clear whether or not defendant had been placed in the patrol car at the time of the search, but it is clear that he had been handcuffed prior to the search of the car. We assign no fault to the lack of development of the record in this regard, however, for as the court in *Gant* noted, *Belton, supra*, 453 U.S. 454, had "been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there [was] no possibility the arrestee could gain access to the vehicle at the time of the search." (*Gant, supra*, 556 U.S. at p. ___ [173 L.Ed.2d at p. 495].)

[8] During discussion of this portion of the *Gant* opinion at oral argument, defense counsel requested the opportunity to further brief its application to the facts of this case. We took the case under submission and indicated that we would vacate that submission if further briefing was deemed necessary. Defense counsel was served with the Attorney General's earlier letter alerting this court to the *Gant* decision, and never requested the opportunity to brief its application to this case, instead choosing to address the issue in his argument to the court. We find no need for further briefing.

vehicle to grab a weapon, an officer is not permitted to search that area to prevent such conduct by the suspect. (*Id.* at pp. ___–___ [173 L.Ed.2d at pp. 496–497].)

The court in *Gant*, however, went on to expand the search incident to arrest exception in a way which it recognized did "not follow from *Chimel*," by indicating that the officer could nevertheless search the passenger compartment if it was " 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' [Citation.]" (*Gant, supra*, 556 U.S. at p. ___ [173 L.Ed.2d at p. 496].) In support of this conclusion, it cited to Justice Scalia's concurring opinion in *Thornton v. United States* (2004) 541 U.S. 615, 632 [158 L.Ed.2d 905, 124 S.Ct. 2127] (*Thornton*), noting that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. [Citations.]" (*Gant, supra*, 556 U.S. at p. ___ [173 L.Ed.2d at p. 496].) In other cases, such as *Belton* and *Thornton*, "the offense of arrest [would] supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." (*Gant*, at p. ___ [173 L.Ed.2d at p. 496].)[9]

To understand this expansion of the search incident to arrest doctrine, it is helpful to look to Justice Scalia's concurring opinion in *Thornton*. Justice Scalia finds support for this approach to searches incident to arrest in earlier cases (pre-*Chimel*), such as *United States v. Rabinowitz* (1950) 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430] (reversed in *Chimel, supra*, 395 U.S. at p. 768 [on its own facts insofar as principles it stands for are inconsistent with those of *Chimel*, no longer to be followed]), where the court upheld a search of the arrestee's place of business after he was arrested there, relying upon "a more general interest in gathering evidence relevant to the crime for which the suspect had been arrested. [Citations.]" (*Thornton, supra*, 541 U.S. at p. 629 (conc. opn. of Scalia, J.).) *Rabinowitz* and other earlier authorities supported that approach, Justice Scalia reasoned, and referred "to the general interest in gathering evidence related to the crime of arrest with no mention of the more specific interest in preventing its concealment or destruction. [Citations.]" (*Thornton*, at p. 629 (conc. opn. of Scalia, J.).) If *Belton* searches are continued to be allowed, Justice Scalia indicated, they cannot be reasonably explained under the application of *Chimel*. Rather they are "a return to the broader sort of search incident to arrest that we allowed before *Chimel*— limited, of course, to searches of motor vehicles, a category of 'effects' which give rise to a reduced expectation of privacy [citation]." (*Thornton*, at p. 631 (conc. opn. of Scalia, J.).) Justice Scalia then indicated that he would "limit

---

[9] In both *Belton* and *Thornton*, the defendants were initially arrested for drug offenses.

*Belton* searches to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle" and noted that in *Thornton,* as in *Belton,* the arrestee was lawfully arrested for a drug offense. (*Thornton,* at p. 632 (conc. opn. of Scalia, J.).) "It was reasonable . . . to believe that further contraband or similar evidence relevant to the crime for which he had been arrested might be found in the vehicle from which he had just alighted and which was still within his vicinity at the time of arrest." (*Ibid.*)

■ Here, when Officer Malone found the firearm on defendant's person, he had probable cause to arrest him for illegal possession of a firearm and could then conduct a search incident to his arrest.[10] Given the crime for which the officer had probable cause to arrest (illegal possession of a firearm), it is " 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " (*Gant, supra,* 556 U.S. at p. ___ [173 L.Ed.2d at p. 496].) Unlike simple traffic violations,[11] which the court in *Gant* specifically noted may provide no reasonable basis for believing the vehicle contains relevant evidence, illegal possession of a firearm is more akin to possession of illegal drugs, which would provide such a reasonable belief. (*Ibid.*) Although the firearm found on defendant was loaded, it was reasonable to believe that the vehicle might contain additional items related to the crime of gun possession such as more ammunition or a holster. Thus we find that the search of the passenger compartment was reasonable under the Fourth Amendment.

Contrary to defendant's assertions on appeal, it matters not whether the officers had *probable cause* to believe the automobile contained evidence of a crime or contraband, or whether the officer believed the car to be stolen. Such factors would have permitted the search of the vehicle under the automobile exception, but are not required for a search of the car incident to defendant's arrest. The *Gant* court specifically requires only a "reasonable basis to believe" the vehicle contains relevant evidence, a standard less than full probable cause. (*Gant, supra,* 556 U.S. at p. ___ [173 L.Ed.2d at p. 496].) Finally, having found defendant's detention, handcuffing, and patsearch to have been reasonable, there was no primary illegality that would render the evidence located in the vehicle fruit of the poisonous tree. (*Wong Sun v. United States* (1963) 371 U.S. 471, 484–488 [9 L.Ed.2d 441, 83 S.Ct. 407].)

---

[10] Again, the record is unclear as to the particulars of defendant's initial arrest, as it does not indicate whether the officer formally placed defendant under arrest prior to searching the vehicle, and if so, for what crime or crimes. At the least, once he located the firearm, he could lawfully arrest defendant for its possession.

[11] Traffic violations, such as driving on a suspended license (the crime for which Gant was arrested), frequently provide no reasonable basis to believe the vehicle contains relevant evidence.

## DISPOSITION

The trial court properly denied defendant's motion to suppress. The judgment is affirmed.

Ruvolo, P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 2009, S175724.