Filed 2/13/15  In re Albert V. CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ALBERT V., a Person Coming Under the Juvenile Court Law. | |
| | F068956 |
| THE PEOPLE, | (Super. Ct. No. 513483) |
| Plaintiff and Respondent, | |
| v. | **OPINION** |
| ALBERT V., | |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Valli K. Israels, Judge.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Cornell, Acting P.J., Poochigian, J., and Detjen, J.

The court adjudged appellant, Albert V., a ward of the court after it sustained a petition charging Albert with possession of a concealable handgun (Pen. Code, § 29610).

On appeal, Albert contends the court erred when it denied his motion to suppress. We affirm.

**FACTS**

On November 26, 2013, Albert was a passenger in an SUV that was stopped by Modesto police officers. During the stop the officers found a handgun in Albert's pants' pocket and arrested him.

On December 2, 2013, the district attorney filed a petition charging Albert with possession of a concealable handgun.

On December 24, 2013, Albert filed a motion to suppress.

On February 3, 2014, the court heard the motion at a combined jurisdiction and disposition hearing. During the hearing, Modesto Police Officer Dwight Miller testified that on November 26, 2013, while working in the street gang unit, he and Officer John Carrico were parked in a patrol car near Avalon and Sutter, a high gang crime area, watching traffic. At approximately 12:26 p.m. Officer Miller noticed an SUV travelling north on Sutter driven by Jaime Chavez, a Norteño gang member whose driving privilege had been suspended and who was on searchable probation. Officer Miller initiated a stop and he and Officer Carrico approached the SUV with guns drawn. A second Norteño gang member, Subhe Qarqat, was sitting in the front passenger seat and Albert was sitting in the back seat. Albert was wearing a black and red hat and a red sweatshirt. The clothing gave Officer Miller the impression that Albert was a Norteño gang member because red is the primary color of identification for that gang. Additionally Albert's clothes were baggy and he had a bulge in one of his pants' pockets.

After verifying that Chavez's driving privilege was suspended the officers intended to cite him, conduct a probation search of his vehicle, and possibly tow it after

2

conducting an inventory search. In order to search the SUV the officers had to get everyone out. Additionally, so that he did not have to have his back towards Albert while he spoke to the driver, Officer Miller took Albert out of the car first. Based on the totality of the circumstances Officer Miller placed Albert in handcuffs.

Officer Miller asked Albert if he could search him for anything illegal and Albert responded that he could not. Nevertheless, for officer safety Miller did a patsearch of Albert and in Albert's right pants' pocket he touched an object that felt like the handle of a gun. The other side of the object felt like the muzzle of a gun. Officer Miller asked Albert if it was a gun and he replied that it was. Officer Miller removed the gun and discovered that the object was a .22-caliber Derringer-type handgun that could carry two bullets, but was empty.

After hearing argument the court denied the suppression motion and sustained the petition allegations. The court then set Albert's maximum term of confinement at 36 months, committed him to juvenile hall for 45 days with credit for 45 days served and placed him on probation in the custody of his mother.

## **DISCUSSION**

Albert contends it was not objectively reasonable for the officers to detain him. He further contends that handcuffing him was unnecessary and that it converted his detention into a de facto arrest without probable cause. Thus, according to Albert, the court erred when it denied his motion to suppress. We reject these contentions.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const.,

3

4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1, 8-9 (*Terry*); *People v. Hernandez* (2008) 45 Cal.4th 295, 299 (*Hernandez*).)

In *Pennsylvania v. Mimms* (1977) 434 U.S. 106 (*Mimms*), the United States Supreme Court held that once a motor vehicle has been lawfully detained for a traffic violation, officers may order the driver to get out of the vehicle without violating the Fourth Amendment. (*Mimms*, at p. 111.) The government's legitimate interest in officer safety outweighs any minimal intrusion of requiring a driver lawfully stopped to exit a vehicle. (*Id*. at pp. 110-111.) In *Maryland v. Wilson* (1997) 519 U.S. 408, 413 (*Wilson*), the United States Supreme Court held that officers lawfully may ask passengers to exit the vehicle during a traffic stop without violating the Fourth Amendment.

Traffic stops are "especially fraught with danger to police officers." (*Michigan v. Long* (1983) 463 U.S. 1032, 1047.) Once a passenger has been asked to exit a vehicle during a traffic stop, an officer may lawfully conduct a patdown for weapons to protect officer safety if the officer reasonably concludes the person might be armed and presently dangerous. (*Wilson*, *supra*, 519 U.S. at pp. 414-415.)

In *Brendlin v. California* (2007) 551 U.S. 249, the United States Supreme Court held that for the duration of a traffic stop, the police officer effectively seizes everyone in the vehicle; the driver and all passengers. (*Id*. at p. 255.) In a traffic stop setting, an officer lawfully detains the driver and all passengers pending inquiry into the vehicular violation. (*Id*. at p. 263.) Even if officers have no basis for suspecting an individual of a crime, they may generally ask questions, ask for identification, and ask for consent to search. (*People v. Brown* (1998) 62 Cal.App.4th 493, 499.)

Here, the officer lawfully stopped the car in which Albert was a passenger because Chavez, the driver, was driving while his driving privilege was suspended and in order to perform a probation search of the car because Chavez was on probation. Since Albert was a passenger in a car that was lawfully detained, he too was lawfully detained.

4

Further, approaching the car with guns drawn and placing Albert in handcuffs did not automatically convert Albert's detention into an arrest. (*People v. Celis* (2004) 33 Cal.4th 667, 675.)

"[H]andcuffing a suspect for a short period does not *necessarily* transform a detention into an arrest. [Citation.] This does not mean, however, that handcuffing a suspect will *never* transform a detention into an arrest. *The issue is whether the use of handcuffs during a detention was reasonably necessary under all of the circumstances of the detention.* [Citations.] We look to 'the facts known to the officers in determining whether their actions went beyond those necessary to effectuate the purpose of the stop, that is, to quickly dispel or confirm police suspicions of criminal activity.' [Citation.]" (*In re Antonio B.* (2008) 166 Cal.App.4th 435, 441 (*Antonio B.*), third italics added.)

"In the cases cited by the Supreme Court as examples in which handcuffing a suspect did not convert a detention into an arrest, the police officers conducted the stops based upon reports of violent felonies by persons matching the descriptions of the detained suspects and/or their vehicles [citations], or reports indicating that the suspect was armed [citations] or that the suspect was seen leaving the scene of an attempted burglary [citation]. The suspects were handcuffed when there was a concern that they would flee *and/or the suspects outnumbered the police officers conducting the detention* [citations], when the suspects were going to be transported to another location for possible identification by the victims [citations], when the officers discovered the suspect was armed [citation], or when the suspect refused to obey the officer's commands [citation]. *In other words, at the time of the detention, the officer had a reasonable basis to believe the detainee presented a physical threat to the officer or would flee.* (See, e.g., *People v. Pilster* (2006) 138 Cal.App.4th 1395, 1405-1406 ["'where an officer has a reasonable basis to think that the person stopped poses a present physical threat to the officer or others, the Fourth Amendment permits the officer to take 'necessary measures

5

... to neutralize the threat' without converting a reasonable stop into a *de facto* arrest'"].)" (*Antonio B*., *supra*, 166 Cal.App.4th at pp. 441-442, italics added.)

Here, the car in which Albert was a passenger was stopped in an area of high gang activity and high crime and it was occupied by two known Norteño gang members. Further, Albert appeared to be a gang member from the way he was dressed, he had a bulge in one of his pants' pockets, and the officers were outnumbered. In view of these circumstances, Officer Miller acted reasonably in removing Albert from the SUV and handcuffing him while he patsearched him to make sure the bulge in his pants' pocket was not a weapon or that he was not carrying any other weapons. (Cf. *People v. Osbourne* (2009) 175 Cal.App.4th 1052, 1062 [officer acted reasonably in handcuffing nervous defendant who tensed up as if attempting to remove hand from officer's grasp which caused officer to fear defendant, who was larger than officer, might be able to break free and assault officer].)

Albert contends that the instant case "compares favorably" with *Antonio B.* because, as in that case, there "was no evidence to suggest that Officer Miller had a basis to believe that [Albert] posed a threat or that handcuffing him was necessary to the purpose of the stop[,]" i.e., to search the vehicle. We disagree.

In *Antonio B.* Detective Hugo Cepeida and two other officers saw the appellant on the street walking side-by-side with a minor who was smoking a hand-rolled cigarette. After the officers stopped and approached the minors, the second minor threw the cigarette on the ground. One officer picked up the cigarette and identified it as marijuana. The officers immediately arrested the second minor and they detained the appellant because, in Detective Cepeida's experience, "marijuana tends to be a communal drug; when one person is smoking it, his companions usually join in smoking it." (*Antonio B*., *supra*, 166 Cal.App.4th at pp. 438-439.)

6

In *Antonio B.*, after handcuffing the appellant, Detective Cepeida asked if he could search him. The appellant consented and during the ensuing search Cepeida found four baggies containing a powder resembling cocaine and six baggies containing a leafy substance resembling marijuana. Additionally, during the suppression hearing Detective Cepeida testified that it was the officers' policy to handcuff people if they were going to detain them. (*Antonio B.*, *supra*, 166 Cal.App.4th at p. 439.)

In finding that the handcuffing of the appellant converted his detention into an unlawful arrest, the *Antonio B.* court noted that the facts of that case were not similar to the facts of published cases in which the handcuffing of a defendant had not been found to convert the detention into an arrest. (*Antonio B.*, *supra*, 166 Cal.App.4th at pp. 441-442.) Thus the court stated,

> "No such circumstances are present in the instant case. Here, the officers detained appellant because he was walking with another teenager who was smoking marijuana, and they believed appellant might also have been smoking marijuana. Unauthorized possession of marijuana is a misdemeanor, punishable by a fine. (Health & Saf. Code, § 11357.) The officers outnumbered the suspects, one of whom was in handcuffs incident to his valid arrest, there was no one else in the vicinity, and appellant did not attempt to flee. *In short, there is no evidence to suggest that the officers had any basis to believe that appellant posed a danger to them or that handcuffing him was necessary to effectuate the purpose of the stop, i.e., to determine whether appellant had been smoking marijuana.*
>
> "Detective Cepeida's 'policy' of handcuffing any suspect he detains for further investigation regardless of the circumstances of the stop ignores the constitutional directive that a detention based upon reasonable suspicion of criminal activity must be conducted using the least intrusive means reasonably available under the circumstances of that particular detention. [Citation.] *Because the use of handcuffs on appellant during the stop was not warranted under the circumstances, the seizure constituted an arrest rather than a detention.* As there was no probable cause to arrest appellant at the time he was handcuffed, the arrest was illegal, and the consent to be searched, which on this record flowed directly from the illegal arrest, was not voluntary. Therefore, the evidence discovered must be suppressed. [Citations.]" (*Antonio B.*, *supra*, 166 Cal.App.4th at p. 442, italics added.)

7

*Antonio B.* is easily distinguishable because here there were numerous circumstances that justified Officer Miller handcuffing Albert in order to search him for weapons. As noted earlier, Albert was in the company of two gang members, he appeared to be a gang member, he was wearing baggy clothing and had a bulge in one of his pants' pockets, the stop occurred in an area of high crime and high gang activity, and the officers here were outnumbered by Albert and the other SUV occupants.

Albert also cites several circumstances to contend it was unreasonable to handcuff him. However, in doing so Albert ignores the circumstances cited above that justified the officers in handcuffing him. Nevertheless one circumstance he cites merits additional comment. Albert contends that Officer Miller could not have seen the bulge in his pants' pocket prior to handcuffing him. He is wrong.

Albert was seated in the back seat of the SUV and prior to having Albert exit the vehicle Officer Miller was located behind where Albert was seated in the vehicle so that the officer would not have his back towards Albert. Further, given the location where the stop occurred, that the two other SUV occupants were gang members, that Albert appeared to also be a gang member, and Officer Miller's concern for officer safety, the court could reasonably have found that while addressing Albert, Officer Miller focused on Albert's appearance and whether anything about him indicated that he posed a threat. It could also reasonably have found that Officer Miller was able to view the bulge in Albert's pants' pocket and focused on it while Albert sat on the back seat listening to the officer's directives to get out of the SUV or as Albert physically got out of the vehicle presumably with his front side facing the officer. Thus, we conclude that the court did not err when it denied Albert's motion to suppress.

## DISPOSITION

The judgment is affirmed.

8